## SUPREME COURT.

BURKHARDT agt. SANFORD AND FARNAM Sheriff of Erie.

In an action commenced against a non resident debtor, pursuant to the provisions of section 135 of the Code of Procedure, and a warrant issued according to the provisions of section 227, the *court acquires jurisdiction of the* action from the time of the allowance of the warrant of attachment.

Where a warrant of attachment is issued in such case, irregularities in service of the summons or in perfecting the judgment will not vitiate the judgment. Such irregularities it seems can only be taken advantage of by motion.

In an action for the recovery of money, so commenced, the plaintiff acquires *no lien upon the land of the defendant by filing a notice of the pendency of the action.* It is not an action affecting the title to real property within the meaning of section 132 of the Code.

The filing of notice of pendency of the action, is in such a case a nullity.

The creditor's lien upon the property in such case attaches upon the *levy or seizure of the property by virtue of the warrant of attachment,* whether the property attached is real or personal property.

Where land has been sold upon execution and sheriff's certificate given as required by statute, it is proper for the owner of the land sold, who claimed that such sale was illegal or did not confer a title upon the purchaser, *to redeem the same from the effect of such sale, and obtain a temporary injunction to prevent the sheriff's paying over the money to the purchaser of such land under the execution, and litigate with such purchaser for the money instead of the land.*

But such temporary injunction can not be sustained unless it appears that there will be danger of losing the money, if it should be paid over to the purchaser, on the ground of his insolvency.

The fact of insolvency must be shown positively, and an affidavit setting it forth upon information or belief will not sustain the injunction.

*Erie Special Term, January* 1852. This is a motion to vacate an injunction order. The facts are substantially as follows, viz: One Bradley was on the 27th day of April 1850, seized of a tract of land in the town of Tonawanda in the county of Erie. On that day a warrant of attachment was issued against said Bradley by Mr. Justice PARKER, in an action against him as a non resident of this state, at the suit of the above named Giles Sanford, a copy of which was served on the plaintiff on the 13th day of May 1850. On the 30th day of April 1850, a notice

of the pendency of such action (which notice described the land above mentioned) was filed in the office of the clerk of the county of Erie.

A judgment was rendered in said action, and judgment roll filed in the office of the clerk of the county of Albany, on the 28th day of August 1850, which roll sets forth, 1st. Summons. 2d. Complaint, demanding judgment for $1379·22, with interest from the 12th day of February 1850, being the amount of two judgments recovered by the defendant Sanford against Bradley, in the Superior Court of the county of Fairfield in the state of Connecticut. 3d. An order bearing date April 27, 1850, made by a justice of this court, directing that the summons be served by publication, also by depositing a copy of complaint and summons in the post office, directed to Bradley, at his place of residence. 4th. Affidavits of mailing such copies. 5th. Affidavit made July 30th, 1850, that no answer had been received. 6th. Affidavits of publication of summons in Commercial Advertiser, a newspaper designated in said order, published in Buffalo, for six weeks sucessively; commencing May 30th, 1850, and the last publication on the 11th of July, 1850. 7th. Affidavit of publication in state paper for six weeks successively, commencing on the 30th day of May 1850, but which did not specify any other day on which said summons was published. 8th. The judgment for $1431·46, and bill of costs for $23·25. That said judgment was docketed in Erie county clerk's office, September 3d, 1850.

On the 31st day of December 1850, the real estate in question was sold by virtue of an execution upon said judgment, by the defendant Farnam, as sheriff of the county of Erie, and bid off by the defendant Sanford, and the certificate of such sale was on that day filed in the office of the clerk of the county of Erie, in which certificate it is stated that said sheriff seized and sold all the right, title and interest which said Bradley had in the said lands on the 30th day of April 1850, for the sum of $1527.

On the 4th day of April 1850, the plaintiff in this action purchased said land of said Bradley, for a good and valuable consideration, without any actual notice of the proceedings against him by or in behalf of Sanford.

Burkhardt agt. Sanford and Farnam.

On the day said lands were sold by the sheriff, and before such sale the plaintiff read, or caused to be read, in the hearing of the defendant, a notice, setting forth that he had purchased said land of Bradley, before the rendition of said judgment.

The plaintiff sets forth in his complaint the foregoiug facts, and *alleges* various irregularities in obtaining and perfecting the judgment, issuing execution thereon, and then alleges his intention to redeem the land from such sale, and asks for an injunction order, restraining the defendant. Farnam from paying over the money which shall be paid to him, to make such redemption, and demands judgment for the money to be paid to the sheriff on such intended redemption, and for damages and costs against the defendant Sanford.

On this complaint, and upon affidavits, an injunction order was granted which the defendants now move to vacate on the following grounds:

1st. The redemption being made, the sale became null and void, and cites Titus vs. Lewis (3 *Barb. S. C. R.* 70; Silliman vs. Wing, 7 *Hill,* 159; American Exchange Bank vs. The Morris Canal and Banking Co., 6 *Hill,* 362; 2 *R. S.* 371, § 47 to 51 inclusive; Wood vs. Colvin, 5 *Hill,* 228; Phyfe vs. Riley, 15 *Wend.* 248; Ex parte Newell, 4 *Hill,* 589).

2d. The payment being voluntary, the money can not be recovered back, and hence no injunction should have been allowed.

3d. It does not appear by the bill that the plaintiff can be injured by allowing the money to be paid to Sanford, as his responsibility is not questioned, except upon information and belief.

4th. The bill shows that the rights of the defendant Sanford, are superior to that of the plaintiff.

LE GRAND MARVIN, *for Plaintiff.*

HAMILTON HARRIS, *for Defendants.*

TAGGART, Justice.—I shall first proceed to consider the last point.

An answer to this point presents the questions: At what time does the lien of an attaching creditor attach, and when does the court acquire jurisdiction of the action against a non resident defendant. If the lien is acquired by the issuing of the warrant

of attachment, or by the filing the notice of the pendency of the action, any subsequent irregularities or omissions, which do not divest the court of jurisdiction, will not defeat the lien acquired by the warrant of attachment, or by the filing notice of the pendency of the action.

By section 139 of the Code, the court is deemed to have acquired jurisdiction and to have control of all subsequent proceedings from the time of the service of the summons in a civil action, or the allowance of a provisional remed

This section is generally deemed to extend the provisions of sections 99 and 137, and provide for a class of cases not within the letter or spirit of those sections.

By the amended Code of 1851, the provisions of this section were still further extended so as to provide for the voluntary appearance of the defendant. Title 7th of the Code enumerates and classifies provisional remedies in civil actions. Chapter 1 treats of arrest and bail; chapter 2, of claim and delivery of personal property; chapter 3, injunction; chapter 4, attachment.

Section 229 provides that the warrant of attachment may be issued whenever it shall appear by affidavit that a cause of action exists against the defendant, specifying the amount of the claim and the grounds thereof; and that the defendant is either a foreign corporation, or not a resident of this state, or has departed therefrom with intent to defraud his creditors, or to avoid the service of summons, or keeps himself concealed therein with the like intent.

The affidavit on which the warrant in this action was allowed, sets forth that the defendant was indebted to the plaintiff in the sum of $1379·22, upon two judgments rendered in the Superior Court of the county of Fairfield in the state of Connecticut, on the second Tuesday of February 1850, which judgments were rendered on two certain promissory notes made by the defendant and held by the plaintiff.

That the judgments were still in force and unsatisfied, and were held and owned by the plaintiff, *and that a summons in this action had been issued to be served on said defendant ;* and that the defendant was not a resident of the state, but was a resident of Westport in the county of Fairfied in the state of Connecticut,

Burkhardt agt. Sanford and Farnam.

and had property in this state. This affidavit states all that is required to authorize the allowance of the warrant, and the warrant of attachment being a provisional remedy, and that being allowed on the 27th day of April 1850, the court then acquired jurisdiction over the action, and any subsequent irregularities would not invalidate the judgment or render the proceedings void; but such irregularities must be taken advantage of by motion, and can not be attacked collaterally. I am confirmed in this view of the subject by the case of Moore's Executors vs. Thayers, executors of McEwen (3 *Code R.* 176). That was a decision at general term on an appeal from an order at special term (see 3 *Code R.* 139). The plaintiff had obtained an attachment under the Code against the property of McEwen, and an order to serve the summons by publication. Before the time prescribed for publication of the summons had expired, McEwen died. A motion was made at special term to substitute McEwen's executors as defendants and denied. On appeal the court say, "the ground upon which this motion was denied at special term was that the summons had not been served at the time of the decease of the defendant. We concur in opinion which was expressed upon the decision of the motion, that, as a general rule, a suit is not commenced, where the service of the summons is by publication, until the expiration of the time for publication prescribed by the Code. But, in addition to the provisions contained in section 137 of the Code, on the commencement of a civil action, it is provided in section 139, that from the time of the allowance of a provisional remedy in a civil action, the court shall be deemed to have acquired jurisdiction, and to have control of all subsequent proceedings. In this case an attachment, which is one of the provisional remedies mentioned in the Code, had been issued against the property of the defendant, McEwen, and his property had been taken under it before his decease. It seems, then, that although there had not been a service of the summons, within the meaning of the Code, still the plaintiff had acquired a provisional lien upon the defendant's property, which would become complete to the amount of his judgment, provided he secured a judgment in the action."

If I am right in this opinion it disposes of all the irregularities

Burkhardt agt. Sanford and Farnam.

complained of, and entitles the defendant Sanford to the fruits of his judgment, and to the money in controversy, provided his lien, by virtue of the warrant, attached upon the land prior to the sale thereof to the plaintiff.

The next inquiry to be made is, when does the lien of the warrant attach? It is contended on the part of the defendant that it attaches on filing the notice of the pendency of the action.

Section 132 of the Code provides for filing notice of pendency of the action in *actions affecting the title to real property*

The defendant insists that this is an action affecting the title to real property. It is difficult to perceive that this is such an action. The suit is brought for the recovery of a demand against the property of the defendant generally, without any regard to the kind of property, or to any specified property. It was no more an action affecting the title to real property, than an ordinary action to secure a demand against a resident debtor by the service of summons and complaint. In such actions the plaintiff often relies upon the real property of the defendant to satisfy his debt, yet he obtains no lien upon it by the commencement of the action; nor can he acquire any lien by filing notice of its pendency, or in any manner make it an action affecting such title, and until the time of docketing the judgment the right of a *bona fide* purchaser will not be affected. So in this case, the defendant in this action acquired no lien upon the land of Bradley by the filing the notice. Sections 1, 3, 4, 5, 6, of title 1 of chapter 5 of part 2 of the Revised Statutes, provides for issuing warrant of attachment against the property of absconding, concealed and non resident debtors. Sections 1 and 3, authorizes the attaching of the property for the payment of debts, and specifies the class of persons against whose property and upon whose application such attachments may be issued. Sections 4 and 5, provide that the application for the attachment shall be in writing, verified by the affidavit of the creditors or of the person making the same in his behalf, in which shall be specified the sum in which the debtor is indebted, over and above all discounts, to the person in whose behalf such application is made, and the grounds upon which such application is founded.

Section 5 provides that the facts and circumstances to establish

the grounds on which such application is made, shall be verified by the affidavit of two disinterested witnesses.

Section 6 authorizes the issuing of attachments upon such proof being made to the satisfaction of the officer, and directs the publication of notice as thereinafter stated.

By the warrant of attachment the sheriff is commanded to attach and safely keep all the estate, real and personal, of the debtor within his county (except such articles as are by law exempt from execution), with all books of account, vouchers and papers, relating thereto.

Section 7 directs that the sheriff shall immediately attach all the real estate of the debtor and all his personal estate, including money and bank notes (except articles exempt from execution), and shall take into his custody all books of account, vouchers and papers relating to the property, debts, credits and effects of such debtor, together with the evidences of his title to real estate, which he shall safely keep to be disposed of as thereinafter directed.

Section 8 provides for making and returning an inventory of the property seized.

Section 28 provides that whenever any warrant of attachment shall be issued pursuant to the provisions of such article, the officer issuing the same shall thereupon immediately order the notice thereinafter directed to be published.

Section 29 fixes the time in which the notice shall be published.

Sections 30 and 31, specify the contents of the notice to be published in the different cases.

Section 32 provides that "all sales, assignments, transfers, mortgages and conveyances of any part of the estate, real or personal, including things in action, of every such absconding or concealed debtor, made after the first publication of such notice, in payment of or as security for any existing prior debt, or for any other consideration, and all judgments confessed by him after that time, shall be absolutely void as against his creditors."

Section 227 of the Code, which provides for the issuing of attachments against non resident, absconding and concealed debtors, enacts that the plaintiff, at the time of the issuing of the summons, or at any time afterward, may have the property of the

defendant attached as thereinafter provided, *as a security for the satisfaction of such judgment as the plaintiff may recover.*

Section 229 provides that the warrant may be issued whenever it shall appear by affidavits that a cause of action exists against a defendant, specifying the amount of the claim and the nature thereof, and that the defendant is either a foreign corporation or not a resident of this state, &c.

Section 231 provides that the warrant shall be directed to the sheriff, and requires him to attach and safely keep all the property of such defendant, within his county, or so much as may be sufficient to satisfy the plaintiff's demand, together with costs and expenses; the amount of which must be stated in conformity with the complaint.

By section 232, the sheriff is directed to proceed thereon in all respects in the manner required of him by law, in case of attachment against absent debtors, he shall make and return an inventory, shall keep the property seized by him, or the proceeds of such as shall have been sold to answer any judgment which may be obtained in such action, and shall, subject to the direction of the court or judge, collect and receive into his possession all debts, credits and effects of the defendant. The sheriff may also take such legal proceedings, either in his own name or in the name of such defendant as may be necessary for that purpose, and discontinue the same at such times and on such terms as the court or judge may direct.

The provisions of the Code, thus far, harmonize with the provisions of the Revised Statutes; but the Code has no provision for publishing notice, as provided by sections 28, 29, 30 and 31 of the Revised Statutes, and no provision makes void any sale or assignment as in section 32 and 33 and it contains no provision for any notice or other proceeding upon which sections 32 and 33 of the Revised Statutes can operate.

By section 237, sub. 2, of the Code, the sheriff is directed to proceed and sell under the execution issued upon such judgment, so much of the attached property real or personal (except as is provided in subdivision 4 of said section), as may be necessary to satisfy the balance of such judgment, if enough for that purpose shall remain in his county.

Burkhardt agt. Sanford and Farnam.

But neither this section of the Code, nor any other provisions thereof, states the time when the lien of the judgment creditor attaches, and to ascertain that time he must resort to the Revised Statutes or the principles of the common law.

By the common law, goods were bound by the test of an execution; but by 2d Revised Statutes, 365, § 13, they are bound only from the delivery of the same to the sheriff. And by section 14, the execution first delivered shall have priority over that subsequently delivered, although the latter may be first levied. And by section 15, the right of priority of attachments and executions are placed upon the same basis as of different executions.

If we adopt the principles of these sections and apply them to real estate attached, it will be seen that the warrant of attachment bound the land from the time of its delivery to the sheriff (April 30), and in that case the title of the defendant Sanford to the proceeds of the sale is established. But this section 17, secures the title to any purchaser in good faith, acquired prior to the actual levy of an execution, without notice of such execution being levied. Section 17, however, excludes the word " attach," contained in section 15, and we are still in the dark as to when such lien attaches (see Butler vs. Maynard, 11 *Wendell*, 548; Hotchkiss vs McVickar, 12 *John. R.* 403; Hagerty vs. Wilbur, 16 *John.* 287).

The defendant Sanford acquired no right by the lien of his judgment as that lien did not attach until judgment was docketed (2 *R. S.* 359, § 3). At common law a judgment or recognizance in the nature of a judgment, did not bind the land of the defendant (The People vs. Haskins, 7 *Wend.* 466; 3 *Black. Com.* 418; 2 *Bac. Ab. title Executions*, 685, 686).

In the case of the American Exchange Bank vs. the Morris Canal and Banking Co., and Richards & Selden vs. The Same (6 *Hill*, 363), the plaintiffs in the first entitled cause commenced an action on the 10th March 1840, by attachment against the defendant, a foreign corporation, and the sheriff of New York on the same day attached the banking house and other property of the defendant. The plaintiff obtained a judgment on the 22d May 1841, which was docketed in the Supreme Court on the

same day, and in the clerk's office of the county on the 25th of October 1843.

The plaintiffs in the second case commenced an action by attachment on the 26th June 1840, obtained a judgment on the 12th of May 1841, which was docketed in the Supreme Court on the same day, and in the office of the clerk of the county on the 9th of July 1842.

The banking house levied upon was sold by virtue of an execution upon the first above mentioned judgment, the execution satisfied out of the proceeds of the sale, and the balance of such proceeds paid over to Richards & Selden to apply on their judgment. They subsequently redeemed the property by virtue of a junior judgment and obtained a stay of proceedings, and moved the court for an order directing the sheriff to pay the money to them, on the ground that their judgment was first docketed, and therefore became the first lien upon the banking house. The motion was argued and decided against Richards & Selden on the assumption that their judgment was the first lien, but that by the sale under a junior judgment their lien was not affected. They obtained a reargument and in the opinion given by the court after such reargument, Chief Justice NELSON says (at page 366), " there can be no doubt, I think, that the lien dates from the seizure under the attachment and not from the judgment." The statute, after providing for the commencement of suits against foreign corporations by attachment, directs that the attachment shall be issued to the sher'ff of the county in which any property of the corporation may be, " commanding him to attach and safely keep all the estate, real and personal, of such corporation " (2 R. S. 375, § 15, 16, 2d ed.).

The attachment is to be executed in the manner provided by law in case of attachment against absent debtors; and the sheriff is required to make and return an inventory and keep the property seized by him, or the proceeds of such as shall have been sold, *to answer any judgment which may be obtained in such suit* (*id.* § 21). The next section provides for an immediate sale of perishable articles and of certain other property which is specified; such as vessels, &c. After which it is declared that if judgment be rendered for the plaintiff and an execution issued

thereon, the sheriff shall pay over to such plaintiff the proceeds of all sales of perishable property and of any vessel, &c.; or so much thereof as may be necessary to satisfy such execution. And if any balance remain due he shall sell under such execution, so much of the property of such corporation remaining in his hands as may be necessary to satisfy such balance" (*id.* § 24).

" It is apparent from these several premises that the property attached, both real and personal, is to be held under the attachment by the officer from the time of the seizure until the rendition of the judgment, in order that it may be applied in satisfaction of the debt, and that the right thus to apply the property relates back to the seizure. The proceeding to judgment is a mode of liquidating the demand of the attaching creditor, with a view to such application, instead of appointing trustees for that purpose, as in case of absent or absconding debtors."

The sections of the statutes cited by the learned justice are analagous to section 227 of the Code, by which the plaintiff " *may have the property attached as a security for the satisfaction of such judgment as the plaintiff may recover*," and to section 232, which provides that the sheriff " *shall make and return an inventory, shall keep the property seized by him, or the proceeds of such as shall have been sold, to answer any judgment which may be obtained in such action.*"

I think it unnecessary to proceed farther in this discussion. I can have no doubt that the lien of the attachment dates from the seizure and from that only. The time the levy was made in this case was most probably on the 13th of May. Neither of the defendants state in their affidavits when the levy was made. The only information the court has on that subject is drawn from the affidavits on the part of the plaintiff and the sheriff's return upon the warrant of attachment. The affidavits state that the first information the plaintiff had of the warrant or existence of the action, was on the 13th day of May, when the sheriff or his deputy delivered to him a copy of the warrant and a notice addressed to the plaintiff, that the same was an original attachment in said sheriff's hands for execution, and that all amounts owing by him to Bradley on bond and mortgage, or otherwise, were attached, and that he was required to make all payments to said sheriff.

On the part of the defendants, the return of the sheriff is the only evidence produced of the time the attachment was levied. The return states that the sheriff attached the lands and premises, and made inventory, appraisal and return thereof to the office issuing the warrant, and on receipt of the execution duly advertised and sold the premises on the 21st day of December 1850. Under which said return is an entry as follows: " Rec'd April 30, '50, made inventory and appraisal return 80 acres of land attached." But neither the affidavit or return, or any other paper on the part of defendants contains any statements of the time the land was attached and inventory made. The question then, as to the absolute rights of parties, will depend upon whether the attachment was served before or after the delivery of the deed.

The affidavit of Harris discloses the fact that the deed was acknowledged by Bradley's wife on the 10th of May, and the execution thereof was proved by Le Grand Marvin on the 13th day of May and that it was not proved according to the statute; but the affidavit on the part of the plaintiff entirely disposes of this point.

If I am correct in the conclusions I have arrived at, the question of priority of the attachment and deed are fairly open for litigation, and the rights of the parties must depend upon that question, unless it shall be found that the plaintiff has lost his right to the money by voluntarily paying it for the purpose of redeeming the land.

I am inclined to think it was proper for the plaintiff to redeem the land from the effect of the sale, and obtain an injunction to prevent the sheriff from paying over the money to the defendant Sanford. He was not bound to have the title to his land pass from him under the sheriff's deed and defend the action brought to recover possession. The risk was greater than he was bound to run, and he had a perfect right to redeem and litigate for the money instead of the land. This land, at the lowest estimate, was worth double the amount of the judgment, and it was a matter of duty for him to secure beyond a contingency his interest in the land beyond the amount for which it had been sold. I am aware that the case of Silliman vs Wing (7 *Hill*, 159),

seems to hold a differnt doctrine but the intimation made by the learned justice who gave the opinion in that case was unnecessary, as he put the decision on entirely different grounds. The case *Ex parte* Newell (4 *Hill*, 589), was a case of redemption and injunction, but no decision or intimation was given as to its being a voluntary payment.

But there is one objection to sustaining the injunction in this case, which I can not surmount. The plaintiff has not shown that it will injure him to have the money paid to the defendant Sanford by the sheriff. He has attempted to show that Sanford is in doubtful circumstances, but all his allegations are upon information and belief, which are not sufficient to authorize the issuing of an injunction, or to sustain one if issued, if he had made a case entitling him to an injunction, still he could not retain it against the affidavits on the part of defendant.

The order for injunction must, therefore, be vacated, with ten dollars costs of motion.