## THACHER a. BANCROFT.

*Supreme Court, First District; At Chambers, May,* 1862.
*Again, May,* 1862.

DEATH OF DEFENDANT.—ABATEMENT AND REVIVOR.—LEVY OF
ATTACHMENT EXECUTION AGAINST EXECUTOR.

By the allowance of an attachment as a provisional remedy, the plaintiff acquires a right in the property attached, not to be defeated by the death of the debtor, if the action survives and the court has power to continue it against his representative.*

---

* In the case of BURKHARDT a. McCLELLAN (*Court of Appeals, March,* 1862), it was *Held,* 1. That an attachment did not bind real estate from the time of the delivery of the warrant to the sheriff. 2. (By four judges.) That it was a lien on real estate from the time of its being levied. 3. That it was not necessary that the sheriff should actually take possession of the real estate levied upon. 4. That where no possible state of proof, applicable to the issues raised, will entitle the respondent to a verdict, the judgment should be reversed without ordering a new trial.

This was an action of ejectment. The plaintiff claimed under a conveyance from the defendant in another action, against whom a warrant of attachment had been issued, which had been levied, and a *lis pendens* filed, prior to such conveyance. The publication of the summons was not, however, completed, and, of course, the execution was not issued until after the conveyance to the plaintiff had been executed.

The provision of the Revised Statutes, to the effect that the surrogate alone shall order executions to be issued against executors or administrators as such, is inapplicable to judgments in actions originally commenced against the decedent.

## I. Motion to discharge attachment.

This action was brought by Thomas Thacher against John H. Cutter, to recover $10,315.79, as the plaintiff's share of the

---

The defendant, as administrator of one Sanford (against whom the action was originally brought), claimed title under the execution in the former action.

The plaintiff had a verdict and judgment, which was reversed at a general term of the Supreme Court, and the complaint dismissed. The plaintiff appealed.

*Le Grand Marvin,* for the appellant.
*John H. Reynolds,* for the respondent.

WRIGHT, J.—If Sanford acquired a lien on the real estate of Bradley before the conveyance to the plaintiff, the latter took his title subject to such lien, and the former would be entitled to the money paid on the redemption of the land. In this view of the case, the question is, whether the sheriff of the county of Erie attached the land prior to the 4th of May, 1850. Bradley, the debtor and conceded owner of the premises up to the latter date, was a non-resident, and a warrant of attachment against his property was regularly allowed by a justice of the Supreme Court on the 29th April, 1850. This warrant was received by the sheriff of the county of Erie on the 30th April, upon which day he made an inventory, appraisal, and return. His official indorsement on the attachment will bear no other construction than that the land was attached on that day. The property in question was unoccupied real estate belonging to a non-resident, and it is not probable, from the evidence, that the sheriff entered upon the land to attach it. Nor do I think this necessary. In the nature of the case, all the officers could do was, with the assistance of two disinterested freeholders, to make an inventory of the property seized and return the same to the judge issuing the warrant. This was done on the 30th of April (four days before the conveyance to the plaintiff), and I think Sanford's lien upon the property dated from that time. The Code does not in terms declare the time when the attachment becomes a lien on the property of the debtor, but it must date from the service of the process or the seizure under it, else the remedy by attachment under the Code would be idle and unavailing. It is provided that at the time of issuing the summons, or afterwards, the plaintiff may have the property attached " as a security for the satisfaction of such judgment as the plaintiff may recover." The sheriff is, on receiving the warrant, to attach and safely keep the property of the defendant to answer any judgment that may be obtained in the action ; and the judgment is to be satisfied out of the property attached. (*Code,* §§ 231, 232, 237.) In the light of their provisions, no other construction can prevail than that the lien of the attachment dates from the seizure or levy under it.

Being of the opinion that there was a valid attachment of the land prior to its being conveyed to the plaintiffs, I have not discussed the further question in the case, viz. : whether the plaintiff, as the grantee of Bradley, having reclaimed the land sold under the execution against Bradley, by presenting the necessary papers

profits under a contract between the parties for the manufacture, shipment, and sale of whiskey. On the 7th day of July, 1860, the plaintiff obtained a warrant of attachment against Cutter as a non-resident debtor. Under this attachment, the sheriff of New York served notices upon several persons and firms who were indebted to Cutter. Cutter died at his residence in New Hampshire on the very day the warrant of attachment was issued: the summons had not been served on him, either personally or by publication. On December 5, 1860, the surrogate of New York issued letters-testamentary upon the estate of Cutter to George Bancroft. In January, 1861, plaintiff procured an order *ex parte* reviving the action against George Bancroft as executor. Prior to this, however, the executor had moved to discharge the attachment: his motion was denied, without prejudice to a renewal after he should have appeared in the action. The complaint was served upon the executor in July, 1861. After the cause was at issue, a reference was ordered. The referee reported in plaintiff's favor for $4,805.60. Judgment was entered December 19, 1861, no costs being allowed. The defendant now moved to discharge the attachment.

*Phelps & Knevals*, for the motion.—I. The suit in which the attachment was granted was never commenced. 1. There is no commencement of an action except by service of process or the

and paying the sheriff the amount for which it was sold, with interest, and thus acquiring such interest as had passed to Sanford on the purchase, can recover the money back in this action, it having been voluntarily paid, with a full knowledge of all the facts, and under no mistake of fact.

The Supreme Court ordered the complaint to be dismissed, instead of granting a new trial. This was not error, for " no possible state of proof applicable to the issues in the case will entitle the plaintiff to recover." All the facts upon which the rights of the parties depend are undisputed, and are all substantially set out in the plaintiff's complaint, and it is impossible that they can be changed or modified. (Edmonston *a.* McLoud, 16 *N. Y.*, 543.)

The judgment of the Supreme Court should be affirmed.

GOULD, J., delivered no written opinion, but orally he concurred that the attachment became a lien from the time of levy. DAVIES and ALLEN were also of that opinion; but the point would not appear to be decided, as SUTHERLAND and DENIO, JJ., put their judgment upon another ground; SMITH, J., was for reversal, and SELDEN, Ch. J., was absent. Upon a previous argument of this case, the question was made whether the attachment did not bind from the time of its delivery to the sheriff, and SELDEN, Ch. J. (with nearly all the court), was for the negative.

voluntary appearance of defendant. (*Code*, § 127; Burkhardt *a*. Sandford, 7 *How. Pr.*, 329; Matter of Griswold, 13 *Barb.*, 412; Moore *a*. Thayer, 10 *Ib.*, 258; S. C., 6 *How. Pr.*, 47; 3 *Code R.*, 176; Nichols *a*. Chapman, 9 *Wend.*, 452.) 2. Moore *a*. Thayer construes § 139 of the Code as giving the court jurisdiction to bring in the representative, and says that there is a lien on the property for that purpose. But here the attachment is against a non-resident who died before the suit was commenced. The judgment is against his representative who is, in a sense, the officer of the court. " The Legislature intended that the goods of a deceased person should go into the hands of his representatives and not into the hands of the sheriff." (Ch. J. SAVAGE in Nichols *a*. Chapman, 9 *Wend.*, 452.) 3. The fact that the action has been revived by an order *ex parte*, and the executor has appeared, is unimportant; this course was taken to avoid a doubtful litigation with the parties on whom the attachment was served. 4. The vigor of the attachment is at an end when the representative is brought into court. 5. No process was served on Cutter, nor even publication commenced.

II. But the attachment should be discharged, because it has never been so executed as to give the plaintiff any right over Cutter's property. 1. An attachment is not a lien till levy; in this respect it differs from an execution. (Yale *a*. Matthews, 12 *Abbotts' Pr.*, 379; and cases there cited.) 2. There was never any levy on any property of Cutter, prior to his death, sufficient to create a lien. The notices were too general and vague. 3. There being no levy, the plaintiff ought not to have his attachment enforced. 4. The defective service is not cured by any thing done after Cutter's death.

*Fine & Chittenden,* opposed.—I. The court acquired full jurisdiction through the attachment, without regard to summons, &c. The action, then, is the attachment, and the attachment is the action; they are convertible things and words. To destroy the attachment, then, would be to end, to abate the action in consequence of and immediately after death of Mr. Cutter. But this is not allowable, for, 1. "No action shall abate by the death," &c. (*Code*, § 121.) At common law, the action would have abated by death at any time. Under the Revised Statutes, as to attachment, death, within a certain

period, would abate it. The Code goes still further, and forbids abatement at any time. And this applies to an action which is essentially an attachment, as to any other action. 2. The executor has now appeared, answered in the action revived against him, consented to its reference, to judgment, and claimed before the surrogate that this property was under attachment; acts, either one of which, much more all together, should estop him from now claiming a dissolution of the attachment, —*i. e.*, an abatement of the action.

II. "An attachment is the commencement of process, although no summons be served." The court acquires jurisdiction from the time the summons is served, or any provisional remedy is allowed. (Treadwell *a.* Lawlor, 15 *How. Pr.*, 8.) In Fich *a.* Ross (4 *Serg. & R.*), the Pennsylvania court says: "These proceedings were, in all respects, *in rem;* they would not abate by the death of the defendant." . (Cited in *Drake on Attachment*, 396.) The Code attachment is exclusively *in rem.*

INGRAHAM, P. J.—An attachment was issued against the testator of the defendant, and served. On the day of issuing the attachment, the defendant, residing in another State, died.

Subsequently his executor appeared and defended the action, and judgment was recovered against him.

A motion is now made to set aside the attachment on account of the death of the debtor.

I. The action was commenced by the allowance of the attachment, so far as to allow the operation of the 121st section of the Code, which provides that no action shall abate by the death of the party, &c. Upon his death, the executor was substituted in his place, and his voluntary appearance in the action operated as a continuance of it, and was equivalent to any other service of summons.

II. By the 139th section of the Code, the allowance of the provisional remedy gave the Court jurisdiction just as effectually as if the summons had been personally served, and, also, control of all subsequent proceedings. The plaintiff, by the allowance of the provisional remedy, acquired a right in the property attached, which could not be defeated by the death of the debtor, if the action survived, and the court had power to continue it against the representative. This was held in *Moore*

*a.* Thayer (10 *Barb.*, 258; S. C., 6 *How. Pr.*, 47; 3 *Code R.*, 176).

The motion to set aside the attachment must be denied.

---

II. Motion by plaintiff for leave to issue execution.

At the same time with the hearing of the foregoing motion was heard a motion on behalf of the plaintiff for leave to issue execution.    It appeared that the plaintiff had previously applied to the surrogate of New York for this leave, but his application was denied.

*Fine & Chittenden,* for the motion.

*Phelps & Knevals,* opposed.—I. The surrogate is the proper officer to issue executions against the executor, and if he has erred, plaintiff's remedy is by appeal from his decision.    (2 *Rev. Stat.*, 116.)

II. An execution will not protect the executor from responsibility and personal loss.    If issued, it is conclusive as to the amount in the executor's hands, and if the property at forced sale fails to satisfy the judgment, the executor will be asked to respond personally.

INGRAHAM, P. J.—In this case, after an attachment was issued against the defendant's testator as a non-resident debtor, he died.    The executor appeared and conducted the defence, and judgment was rendered against him.

The plaintiff now moves for leave to issue execution.

It is contended that the provisions of law require that on the recovery of a judgment against executors, payment is to be decreed by the surrogate in the course of distribution, and that he only can order execution to be issued.    This is so in actions brought against executors, and is intended to guard against an improper priority and against exposing the executors unnecessarily to costs.    But in such cases the statute also provides for an application to the executors to refer, and makes them liable to costs if they unreasonably refuse such a reference.    No such proceeding can take place where the action is commenced against the testator in the first instance.

I have held in this case, in a motion decided at this term, that the court acquired jurisdiction of the matter on issuing the attachment. This was held also in Moore *a.* Thayer (10 *Barb.*, 258; S. C., 6 *How. Pr.*, 47; 3 *Code R.*, 176). In Burckhardt *a.* Sanford (7 *How. Pr.*, 329), it is said, that by the allowance of the provisional remedy the plaintiff had acquired a lien upon the defendant's property, which would become complete to the amount of his judgment, provided he recovered, &c.

Having such a lien upon the property, and the suit having been thereby so far commenced that it did not abate by the death of the defendant, but must be continued against the representatives of the deceased, it necessarily follows that the action must proceed, irrespective of those provisions of law as to suits against executors, &c., to which I have before referred.

It appears, also, from the provisions of the Code, that this lien acquired by the attachment can only be realized and made available by an execution—except as to the proceeds of perishable property (§ 237); and on receipt of the execution, the sheriff is directed to proceed to sell under the execution so much of the attached property as may be necessary. The execution, it will be seen, is but a continuance of the attachment, by which the attached property is to be converted into money and applied to the payment of the plaintiff's claim. It seems, therefore, to be necessary that an execution should be issued for the benefit of both parties, to secure the application of the attached property to the payment of the debt for which it has been made liable.

Nor do I think such an order must be made by the surrogate. The cases in which the surrogate has control are cases in which the surrogate is to call the executor to account, to ascertain if he has in his hands assets applicable to the payment of the plaintiff's claim, and then only in cases in which a trial has been had on the merits. Such is not necessary here. (People *a.* Mayor's Court, 9 *Wend.*, 486.)

The 237th section of the Code contemplates the satisfaction of the judgment out of the attached property, and in no other way. For this purpose, the warrant of attachment has no limit as to time within which it may be executed, but is continued in force, and is not to be returned until the same shall be fully executed.

The issuing of the execution, therefore, is for the purpose of completing, by a sale, the application of the attached property, and is in no way connected with the inquiry which the surrogate would make as to assets in the hands of the executors.

The provision, also, in the 139th section, that in actions commenced by the allowance of a provisional remedy, the court is deemed to have jurisdiction, and to have control of all subsequent proceedings, seems to vest in the court the control of the execution and the power to allow it to be issued.

But while granting leave to issue the execution, I am of the opinion that the plaintiff should be required to limit its operation to the property held under the attachment. This can be done by an indorsement on it directing the sheriff only to enforce it against the property upon which the attachment is a lien. With this direction, all of the objections made by the defendant will remain without being interfered with, and the attached property be applied to the payment of the plaintiff's claim.

The questions raised on this motion, and the cross-motion in this case, are novel; but I see no other way to carry out the intent of the Code. The attachment remains in force, notwithstanding the death of the defendant; the revival of the action by the appearance of the executor enables the plaintiff to obtain his judgment. Payment of such judgment out of the attached property can only be obtained through an execution by which the attached property is to be sold. The executor refuses to include the property levied on under the attachment as assets, and if he did, the sheriff could not deliver to him the property. Unless the execution is ordered by the court, there is no person to dispose of the property or apply it to the benefit of the estate of the deceased, and it would remain in the condition it is now in without limit.

Such a state of things could not with propriety exist.

I think the motion for leave to issue the execution must be granted, with the limitation suggested in the opinion.