AUGUST TETZLOFF, Appellee, v. GEORGE E. MAY, Adminis-
trator, Appellee, PAULINE FEIL et al., Interveners, Appel-
lants.

AUGUST HAVENER, Appellee, v. GEORGE E. MAY, Adminis-
trator, Appellee, PAULINE FEIL et al., Interveners, Appel-
lants.

**ATTACHMENT: Dissolution—Death of Defendant.** An attachment
1   on real property is not dissolved by the death of the attachment
defendant. The administrator of the estate of the defendant may
be substituted, and the cause proceed.

**EXECUTORS AND ADMINISTRATORS: Allowance to Surviving
2   Spouse—Priority—Attaching Creditor.** The amount allowed by
the court to the widow for her *support* for the year following the
death of her husband is of a higher order than the claims of at-
taching creditors of the deceased, and takes priority thereover.

**EXECUTORS AND ADMINISTRATORS: Real Property and Interest
3   Therein—Foreclosure—Rents During Redemption Period—Who
Entitled to.** Rents of real estate, collected during the redemption
period following the foreclosure of a mortgage given by an intes-
tate, belong to the widow and heirs, they being in possession, and
not to the administrator who has neither been ordered to sell the
land, take possession, nor collect the rents.

**APPEAL AND ERROR: Right of Review—Adverse Ruling after Re-
4   mand.** Under stated facts held, an appellant, after remand, was
not precluded from a further appeal from adverse rulings entered
subsequent to the remand.

*Appeal from Floyd District Court.*—HON. C. H.
KELLEY, Judge.

WEDNESDAY, NOVEMBER 24, 1915.

THIS is a controversy between the widow and heirs at
law and the administrator of the estate of C. C. Feil, deceased,

and August Tetzloff and August Havener, attaching creditors of the real estate of the deceased, over the surplus funds arising upon an execution sale under a foreclosure of a mortgage upon the attached real estate of the deceased after the payment of the mortgage indebtedness. It also involves a question as to the proper distribution of the rents of the real estate during the year of redemption after the sale.

The trial court gave the widow one-third of the surplus, made Tetzloff's claim a first lien upon the remainder; gave Havener a second lien, and ordered the balance, if any, to be paid to the administrator of the estate, to be administered as general assets. The rents, after paying the receiver's compensation and court costs, were ordered turned over to the administrator to be distributed as general assets. The administrator was also authorized to make redemption from the foreclosure, in the event he could raise the money. The widow and heirs appeal.—*Modified* and *Remanded.*

*Frank Lingenfelder,* for appellants.

*H. J. Fitzgerald,* for Tetzloff & Havener, appellees.

*J. C. Campbell,* for administrator, appellee.

DEEMER, C. J.—I. On the 20th of July, 1906, Charles C. Feil and Polly Feil (Pauline Feil), husband and wife, executed to the First National Bank of Charles City, Iowa, a mortgage for $10,000 upon the southwesterly two-thirds of Lot 6 in Block 4 of Kelly & Company's Addition to St. Charles, now incorporated in Charles City, Iowa, with interest according to the terms thereof, together with an assignment of the rents of said premises as additional security for said mortgage. On November 30, 1909, August Tetzloff filed in the office of the clerk of the district court of Floyd County, Iowa, a certain verified petition at law, claiming of the defendant, Charles C. Feil, the sum of $572.65 for grain sold and delivered to said defendant, and interest and costs, and asking that a writ

of attachment issue against the goods, chattels and property of said defendant. And on the same day, a writ of attachment was issued to the sheriff of Floyd County, Iowa, under said petition, by virtue of which writ the said sheriff did, on the 1st day of December, 1909, attach the above described mortgaged real estate as the property of Charles C. Feil. On the 2d day of December, 1909, August Havener filed in the office of the clerk of the district court of Floyd County, Iowa, his verified petition, claiming of the defendant, C. C. Feil, the sum of $280, with interest upon certain promissory notes and costs, and asking that a writ of attachment issue against the goods, property and chattels of the defendant. And, on the same day, a writ of attachment was issued to the sheriff of Floyd County, Iowa, under said petition, under which writ the sheriff did, on the 1st day of December, 1909, attach the above described real estate as the property of C. C. Feil. On the 14th day of February, 1910, the said Charles C. Feil died intestate, seized of the said real estate, subject to said mortgage, leaving Pauline Feil, his widow, Wilhelmina Feil (now Hibner) and Mollie Feil, his only children and heirs at law. On June 9, 1910, George E. May was duly appointed and qualified as administrator of the estate of said Charles C. Feil, deceased. On July 22, 1910, the administrator filed his verified application to sell said real estate of decedent, to pay the debts of decedent, making the widow and heirs at law parties defendant. At the September, 1910, term of the district court of Floyd County, Iowa, the bank brought an action to foreclose the said mortgage against George E. May, administrator of the estate of Charles C. Feil, deceased, Polly Feil, his widow, Wilhelmina Feil and Mollie Feil, his heirs at law, and against August Havener and August Tetzloff, defendants; and in said foreclosure procedure, H. M. Walleser was appointed receiver to collect the rents of said premises that had been assigned for additional security. The mortgage and notes were reduced to judgment by the foreclosure of said mortgage, which was a first lien upon said premises, and the

rents collected by the said receiver prior to the foreclosure were applied upon the judgment. Thereafter, on the 12th day of December, 1913, the premises were sold at sheriff's sale under special execution in the foreclosure proceedings, and the said premises were sold to Herbert Cook for $8,500, there being a surplus of $926.60 over and above the amount necessary to pay said judgment, which surplus was paid over to the clerk of the court for further disposition, and which surplus is in controversy in this action.

Subsequently, Herbert Cook received a sheriff's deed to said premises and now owns the same. Later, the receiver continued to collect the rents of the premises during the year of redemption, and on December 4, 1914, reported a balance in his hands of $727.70, which was also paid over to the clerk of the court, less $30 compensation to the receiver, for further disposition, which amount is also in controversy in this action. On February 19, 1914, the administrator filed a verified application for authority to collect the rents from the said real estate, alleging that claims had been filed against said estate amounting to $700; that there was no other property belonging to said estate and that no funds had come into the hands of this administrator, as such, with which to pay the claims filed in said estate and the expense of administration, and it is necessary that this administrator collect the rents and profits of the premises hereinbefore described, for the purpose of paying the claims filed in said estate and for the purpose of paying the expenses of administration of the estate.

The widow and heirs at law intervened in the original attachment suits, claiming that said suits were abated by the death of the attachment defendant; that the widow was entitled to an undivided one third of the property left by the deceased or the proceeds thereof; and, in addition thereto, that her allowance of $300 for her year's support was entitled to priority over the liens of the attaching creditors; and that she was also entitled to one third of the rentals of the property

after the death of her husband. The widow and heirs objected also to the administrator's application to sell real estate, on many grounds not necessary to enumerate here. They also objected to the administrator's application for authority to collect rents, for the reason that he had never been in possession of the property and was not entitled thereto; that they, the widow and heirs, had been in possession until they sold their interests to strangers; that one third of the rents belonged to the widow; and that her allowance for support was and is prior to the claims of other creditors. In their pleadings, the widow and heirs at law admitted that the receiver applied the rents and profits collected by him prior to the sale of the property under foreclosure of the mortgage upon the debts secured by the mortgage, but averred that thereafter he collected rents from the property, amounting to $727.70. The widow claims that the allowance for her year's support should be taken from one fund or the other and given priority over any other, save the mortgage lien, which has never been satisfied; and she and the heirs contend that they are entitled to all the rents and profits, because these rents, during the year of redemption, were and are their property, and the creditors never became entitled thereto. The rents accrued from December 12, 1913, to December 4, 1914, and the administrator's application for authority to collect rents was not filed until February 19, 1914, and no ruling was made thereon until the actions from which these appeals were taken went to decree.

Appellants contend on this appeal: (a) That the attachments on the real estate were dissolved and the actions abated by the death of the attachment defendant; (b) that the widow was entitled to one third of the surplus on the foreclosure and sale, and the $300 allowed her for support, prior to all other claims, and that she and the heirs are entitled to all the rents and profits, and that the trial court was in error in distributing the funds as it did.

One feature of this case has heretofore been before us.

See *Tetzloff v. May*, 151 Iowa 441. That case simply holds that the widow was entitled to her distributive share out of the proceeds of the real estate and that her allowance for support was also entitled to precedence over the claims of attaching creditors. No pronouncement was made regarding the validity of the attachments, save to say that the weight of authority probably was to the effect that the death of an attachment defendant dissolved all the attachments on real estate, and that attaching creditors, as such, secured no priority over the widow's allowance for support, leaving open the question as to whether said allowance had priority over the claims of creditors who filed their claims in time. The main questions arising on this appeal were not decided.

II. We have heretofore held that an attachment on personal property in an action properly commenced is not dissolved by the death of the attachment defendant. *Lord v. Allen*, 34 Iowa 281. The reason given for this holding was that the attachment created a specific lien upon the property which was not dissolved by the death of the attachment defendant, following the case of *Hannahs v. Felt*, 15 Iowa 141, 144. The same reasoning is applicable to an attachment of real estate and calls for the same result. It is true that many courts, in construing local statutes, have held that the death of an attachment defendant dissolves an attachment, whether it be upon real or personal property. *Vaughn v. Sturtevant*, 7 R. I. 372; *Bullard v. Dame*, 7 Pick. (Mass.) 239; *Collins v. Duffy*, 7 La. Ann. 39; *Sweringen v. Eberius*, 7 Mo. 421; *Myers v. Mott*, 29 Cal. 359; *Harrison v. Renfro*, 13 Mo. 446; *Green v. Barker*, 14 Conn. 431; *Crocker v. Radcliffe*, 3 Brev. (S. Car.) 23. A contrary doctrine is announced in *Moore v. Thayer*, 6 Howard Prac. 47 (10 Barb. (N. Y.) 258); *White v. Heavner*, 7 W. Va. 324; *Perkins' Heirs v. Norvell*, 6 Hum. (Tenn.) 151; *Boyd v. Roberts*, 10 Heisk (Tenn.) 474; *Smith v. Warden*, 35 N. J. L. 346; *Loubat v. Kipp*, 9 Fla. 60; *Holman v. Fisher*, 49 Miss. 472; *Davis v. Shapleigh*, 19 Ill. 386; *Dow v. Blake*, 148 Ill. 76;

1. ATTACHMENT: dissolution: death of defendant.

*Mitchell v. Schoonover,* 16 Ore. 211; *Coit v. Sistare,* (Conn.) 84 Atl. 119; and *Craig v. Wagner,* (Conn.) 89 Atl. 916.

So much depends upon the terms of the statutes in the several states that a mere count of the cases does not show the preponderant weight of authority. At common law, death of a defendant abated an action and, as the action was abated, an attachment of necessity fell with it and was dissolved. Our statutes, however, provide that all causes of action shall survive and may be brought, notwithstanding the death of the person liable (Code Sec. 3443); and Sec. 3445, Code, also provides that:

"Any action contemplated in the two preceding sections may be brought, or the court, on motion, may allow the action to be continued, by or against the legal representatives or successors in interest of the deceased. Such action shall be deemed a continuing one, and to have accrued to such representative or successor at the time it would have accrued to the deceased if he had survived. If such is continued against the legal representative of the defendant, a notice shall be served on him as in case of original notices."

Sec. 3345 of the Code provides that: "Actions pending against the decedent at the time of his death may be prosecuted to judgment, his executor or administrator being substituted as defendant, and any judgment rendered therein shall be placed in the catalogue of established claims, but shall not be a lien."

Sec. 3899 of the Code also provides that: "Real estate or equitable interests therein may be attached, and the levy shall be a lien thereon from the time of an entry made and signed by the officer making the same upon the incumbrance book in the office of the clerk of the county in which the land is situated, showing the levy, the date thereof, name of the county from which the attachment issued, title of the action, and a description of the land levied on."

It is also provided in Sec. 3929 of the Code that: "A

motion may be made to discharge the attachment or any part thereof, at any time before trial, for insufficiency of statement of cause thereof, or for other cause making it apparent of record that the attachment should not have issued, or should not have been levied on all or on some part of the property held.''

Sec. 4036 of the Code provides that: ''When a judgment has been obtained against a decedent in his lifetime, the plaintiff may file his petition in the office of the clerk of the court where the judgment is rendered, against the executor, the heirs and devisees of real estate, if such there be, setting forth the facts, and that there is real estate of the deceased, describing its location and extent, and praying the court to award execution against the same.''

Sec. 4071 of the Code provides as follows: ''The death of part of the joint debtors in a judgment shall not prevent execution being issued thereon, but, when issued, it shall operate alone on the survivors and their property.''

When the action proceeds against a nonresident, it is *in rem*, or *quasi in rem* (*Slater v. Roche*, 148 Iowa 413), and the lien created by the attachment is not dissolved by the death of the attachment defendant. See the *Lord* case, *supra*. There can be no difference in this respect between attachments on real and personal property.

The attachment created a lien upon the real estate, and the administrator, upon the death of defendant in the main action, could be substituted as defendant and the case proceed to judgment. After judgment rendered, plaintiff in the action could enforce the lien, under the provisions of Sec. 4036 *et seq.* of the Code, or by revivor or *scire facias* against the widow and heirs. Without such proceeding, no execution could issue against one deceased; but, as execution could be authorized either under Sec. 4036 of the Code or by revivor or *scire facias*, the plaintiff did not lose the lien created by the attachment. There is no provision in our law, as there is in many states, to the effect that the death of an attachment de-

fendant shall discharge the attachment. A lien is therefore created thereby which is not by law expressly dissolved on the defendant's death.

Commenting upon statutes very similar to our own, the Supreme Court of Oregon, in *Mitchell v. Schoonover*, 17 Pac. 869, said:

"It is conceded that there is no provision of the Code which declares that an attachment will be dissolved by the death of either party. If such a result follows death, it must be gathered inferentially from some provision of the Code, because it is nowhere expressed. But it will be most convenient to see, first, what effect the death of a party has upon a pending action. Sec. .38, Hill's Code, declares: 'No action shall abate by the death, marriage, or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue. In case of death, marriage, or other disability of a party, the court may, at any time within one year thereafter, allow the action to be continued by or against his personal representatives or successor in interest'. And by Sec. 144, it is provided that 'the plaintiff may at the time of issuing the summons, or any time afterwards, have the property of the defendant attached as security for the satisfaction of any judgment that may be recovered. . . . From the date of the attachment until it be discharged or the writ executed, the plaintiff, as against third persons, shall be deemed a purchaser in good faith for a valuable consideration of the property, real and personal, attached. . . . If effect be given to all of these provisions of the Code, the attachment is not dissolved by death. If a party die, the adverse party may, within one year thereafter, cause the action to be continued by or against the personal representatives of such deceased party; and the effect of a judgment in such action is to subject the property attached to its payment. There is some conflict among the authorities on the subject; but I think the decided weight of authority, as well as the better reason, is to the effect that an attach-

ment is not dissolved by death unless some statute expressly so declares. In *More v. Thayer,* 10 Barb. 258, a complaint had been filed, and an attachment issued and served, but no summons had been served; but the court had acquired such jurisdiction of the action by the allowance of the provisional remedy of attachment that the defendant's administrator could be brought in, and the attached property subjected to the judgment. So, in *Perkins' Heirs v. Norvell,* 6 Hum. (Tenn.) 151, it was held that the death of the defendant did not dissolve the attachment, and that the attached property might be subjected to the payment of the debt by bringing in the heirs by means of a *scire facias.* In *Thacher v. Bancroft,* 15 Abb. Pr. 243, an attachment was issued, and on the same day the defendant died. Subsequently his executor appeared, and defended the action, and judgment was rendered in favor of the plaintiff. In passing on the question whether the attachment held the property or not, the court said: 'The attachment remains in force notwithstanding the death of the defendant. The revival of the action by the appearance of the executor enables the plaintiff to obtain his judgment. Payment of such judgment out of the attached property can only be obtained through an execution by which the attached property can be sold.' So in *Kennedy v. Raguet,* 1 Bay (S. C.) 484, an attachment was issued, and certain persons were garnished. The garnishees made default, and judgment went against them. About the time or immediately after the issuing execution it was discovered that Raguet, the principal debtor, had died at Bordeaux before the signing of judgment against the garnishees. They therefore moved to set aside the judgment and execution against them, for the reason that the death of the defendant before judgment abated the action, and dissolved the attachment. But their motion was disallowed, and they were held liable on the judgment. So, also, in *Holman v. Fisher,* 49 Miss. 472, it was held, in effect, that, if a defendant die after the service of a writ of attachment, the writ is not abated, but may proceed to judgment;

the court holding that the proceedings thereby become strictly *in rem,* under the statute of that state. And the like rule was held in *White v. Heavner,* 7 W. Va. 324, the court saying: 'The death of Henry O'Middleton, the debtor, after the attachment was levied on the real property, did not dissolve the attachment, or the lien thereof, upon the realty attached'.''

This reasoning and review of the authorities is so cogent that we adopt it as the rule for the state. Indeed, although the Alabama court seems to see a distinction between attachments on real and personal property under the statutes and rules of that state, no distinction is made in our statutes, and we know of no good reason for making any; and, unless we overrule the *Lord* case, *supra,* we must hold that the attachments in question were not dissolved by the death of the attachment defendant. Of course, upon the death of an owner of real estate, the title passes immediately to his widow and heirs, which is not the case with personal property; but the real estate passes to the heirs, subject to all valid liens thereon; and as an attachment is a lien upon real estate, and the final judgment when rendered can be enforced against real estate, just as it could against personalty upon which there was a lien created by the levy of an execution thereon, there is no reason for making one rule for attached personalty and another for real estate.

III. The widow's allowance for support takes precedence over all ordinary claims against the estate and may be ordered paid to her in full, although the estate is insolvent. *In re Estate Dennis,* 67 Iowa 110; *Newans v. Newans,* 79 Iowa 32; *In re Estate Peet,* 79 Iowa 185-191; *Busby v. Busby,* 120 Iowa 536; *Dutch v. Marvin,* 72 Iowa 663-665; *Hamilton v. Hamilton,* 148 Iowa 127-129.

2. EXECUTORS AND ADMINISTRATORS: allowance to surviving spouse: priority: attaching creditor.

IV. The question as to priority between the widow's allowance for support and the claims of attachment creditors was involved on the former appeal, and we there held that the widow's allowance for support took precedence over the

plaintiff's attachments. See *Tetzloff v. May*, 151 Iowa 445-446. The court in the instant case held, as we understand it, that the widow's allowance should be paid out of the rents collected by the receiver or administrator during the year allowed for redemption, and that the attaching creditors had priority over the widow, in so far as her allowance for support is involved. Whether or not this is correct will depend largely upon the correctness of its decree in the disposition of the rents and profits.

V. As to the rents and profits: The mortgage covered the rents and profits, and a receiver was appointed in the foreclosure action who took charge of and rented the real estate, pending sale. He applied these rents upon the indebtedness, thus increasing the surplus growing out of the sale. This was a proper disposition of these rents and was authorized by the mortgage which the widow signed. The receiver, since the sale under the mortgage, collected rents (the amount thereof being uncertain under this record) and afterwards turned them over to the clerk, and the clerk was advised to turn them over to the administrator, after paying the court costs, to be accounted for as general assets of the estate. The widow and heirs at law claim that they are entitled to these rents, because they were in possession of the property and the court never ordered the administrator to take possession of the real estate, never ordered the property sold to pay debts, and never gave the administrator authority to collect the rents; although he had filed an application to sell and for authority to collect rents, neither of which was ever passed upon by the court. Under the authority of *Dexter v. Hayes*, 88 Iowa 493, it seems to us that the trial court erred in ordering these rents and profits turned over to the administrator, to be used by him as assets belonging to the state. In that case, it is said:

3. EXECUTORS AND ADMINISTRATORS: real property and interest therein: foreclosure: rents during redemption period: who entitled to.

"The appellant cites Sec. 3102 of the Code, giving the right to defendant in execution of one year to redeem, and

the right of possession during that time. He also cites *Barnes v. Cavanagh,* 53 Iowa 27, holding that the interest of a judgment defendant is subject to levy and sale, and contends that the use of the land during the period for redemption did not pass to the widow and heirs, but was subject to the debts of the estate. The right of redemption was an equitable estate in real property, and, in the absence of will or statute to the contrary, vested in the defendants immediately upon the death of Mr. Hayes. *Lepage v. McNamara,* 5 Iowa 124; *Foteaux v. Lepage,* 6 Iowa 124; *Beezley v. Burgett,* 15 Iowa 192; *Laverty v. Woodward,* 16 Iowa 1; *Kinsell v. Billings,* 35 Iowa 156. The relinquishment of the widow was to the mortgagees only, and she might assert her rights as against all other creditors. It is clear that, in the absence of will or statute providing otherwise, the defendants were entitled to the use and rents of this land.

"III. The only statutes under which executors and administrators are entitled to rents of real estate accruing after the death of the owner are Secs. 2402 and 2403 of the Code. Under the first he may take possession, receive rents, etc., 'if there be no heir or devisee present and competent to take possession,' and, under the second, 'under the order and direction of the court, (he) may apply the profits of such real estate to the payment of taxes, and of debts and claims against the estate of the deceased, in case the personal assets are insufficient.'

"In *Toerring v. Lamp,* 77 Iowa 488, it is held that Sec. 2403 is not limited to real estate of which the executor may take possession under Sec. 2402, but applied to all the real estate of the decedent. It is entirely clear that appellant was not entitled to possession, and is not entitled to rents or profits, under either of these sections, as the defendants were present and competent to take possession, and appellant had no order or direction of the court, as provided in Sec. 2403."

As indicated in this quotation, the widow and heirs did not, by the widow's signing the mortgage, forfeit their rights to receive rents and profits during the period of redemption,

and there was no authority in the administrator to receive or demand the same. *In re Pennock's Estate,* 122 Iowa 622, does not run counter to this view. There the administrator collected rents with the assent of the widow, and she was held estopped by reason of that fact from claiming any interest therein.

The net result is that the widow and heirs are entitled to the rents and profits accruing during the period of redemption from the foreclosure sale; that the widow's allowance for support is entitled to preference over the claims of the attaching creditors; and the decree should be modified to accord with this opinion. Appellee's motion to dismiss the appeal, based upon the fact that the widow has received and receipted for her one third of the surplus of the foreclosure sale, and the further fact that the clerk of the courts has turned over to the administrator all the rents and profits deposited with him by the receiver, is without merit, and is therefore overruled.

4. APPEAL AND ERROR: right of review: adverse ruling after remand.

The right of the widow to her undivided one third of the surplus was not in controversy after the first appeal to this court; and by receiving the same, she did not lose the right to appeal from other adverse rulings after the remand of the case on its first appeal. See *Upton Manufacturing Co. v. Huiske,* 69 Iowa 557; *In re Youngerman Est.,* 136 Iowa 488. Appellant was not deprived of her right of appeal because the clerk turned over the rents and profits to the administrator. There was no order of court authorizing or requiring him to do so until the final decree was entered herein. In order to avoid misapprehension as to the state of the record, we should here say that, according to an amended abstract, which is not denied, the amount of the rents and profits turned over to the administrator by the clerk of the district court was $480.01, instead of $727.70, as stated in the fore part of this opinion. The case will be remanded for orders and decree in harmony with this opinion.—*Modified* and *Remanded.*

WEAVER, EVANS and PRESTON, JJ., concur.