## HARRISON vs. RENFRO.

Where a special judgment has been rendered against a debtor, without a personal service, under a proceeding in attachment, upon the death of the debtor after the rendition of the judgment, the lien of the attachment is lost. Nor can such judgment be made the basis of any proceeding in the county court; nor can an execution issue thereon.

## ERROR to Callaway Circuit Court.

### STATEMENT OF THE CASE.

Crockett Harrison sued Reuben M. Renfro in the Callaway circuit court to the October term, 1844, by petition in debt, and attached two slaves in the possession of Mrs. Renfro as the property of the defendant, and had judgment by default, on publication of notice at April term, 1846. At the October term, 1844, Mrs. Renfro appeared and claimed the attached slaves, and upon a trial of the issue made on that plea, the plaintiff, Harrison, had a verdict and judgment, which was reversed in this court at the January term, 1847; (10 Mo. Rep. 412.) A second trial of this issue took place in the Spring term, 1848, of the Callaway circuit court, when a verdict was again found for the plaintiff, Harrison. A motion was made by Mrs. Renfro to set aside this verdict, on the ground that the court had improperly excluded evidence which she had offered; that the court improperly decided the law of the case; and that the verdict was against the law and evidence. A new trial was granted, to which the plaintiff, Harrison, excepted, and filed a bill setting forth the evidence given on this trial.

Reuben M. Renfro, the defendant in the original suit, died in May, 1847, and at the October term, 1848, the claimant suggested and established the death of the defendant, and moved the court to stay all further proceedings upon her claim, and allow her to retain in her possession the attached slaves. The court adjudged accordingly, and to this opinion the plaintiff excepted and took a bill of exceptions, upon which the cause is brought to this court.

ANSELL, for plaintiff in error.

1. When a person is absent, not a resident of nor residing within the State, an attachment is given against his property, not against his person. The lien of attachment holds the property until judgment, and if the party, on publication, does not appear, and judgment is rendered by default, such judgment binds the property attached, unless the defendant appears and sets aside said judgment according to the regulations of the statute concerning attachments. See attachments, secs. 14, 15, 16, 17, 25, 26, 47, 51, 59, Statutes Mo. page 138, &c.

2. The death of the defendant can have no effect in setting aside a judgment in rem. The judgment is a special judgment against the property—has no force against the person or other effects of the deceased, except the property bound by such judgment. The property is divested from the control of said defendant, his heirs, executors, administrators and assigns, to the intent of said judgment, unless the proper means are taken as prescribed by law to set aside said judgment, and release the property from the lien of said judgment. Reuben Renfro never made any attempt to set aside said judgment, and therefore it binds the attached property so far as he is concerned. And if the judgment does not bind the property, it must

be presented to the county court and classed, and therefore the right of the interpleader ought to have been settled. Swearingen vs. Eberius, 7 Mo. R. 421; Clark vs. Holliday, 9 Mo. R. 713; Prewitt vs. Jewell, 9 Mo. R. 732.

3. Mrs. Renfro had a right to interplead in the cause, if the property attached was hers, and to have issues made up and tried as on a collateral proceeding. She had no right to suggest the death of Reuben M. Renfro as a reason for dismissing the interpleader and cancelling the attachment bond. The court was competent to try the issue between the interpleader and plaintiff in the attachment, and she could only divest the lien of the judgment on such property by proving it to be hers. She voluntarily abandoned her rights, if any, by her motion to dismiss, and ought to be adjudged to pay costs in said interpleader. See attachments, secs. 39 and 40; Stat. Mo. page 141, &c.

4. Mrs. Renfro held a life interest in the negroes, a vested remainder was in the heirs, of which Reuben was one. There was a priority between the mother and children, and a relinquishment on her part by deed, with delivery of said deed, was of sufficient possession of those in remainder, even without actual delivery of the negroes to them to render them subject to the demands of creditors. 2 Blu. 164 to 169, side paging; 2 Blu. 325,326, side paging.

5. But there was an actual and positive delivery of the negroes to all the children, except Reuben, and so found by the jury on two separate trials. They were delivered to the children by Mrs. Renfro for distribution. They were valued for sale by her consent, and sold with her knowledge, and she afterwards stated that she was keeping Sam and Margaret for Reuben M. Renfro. It was clearly proved in the last trial that Shelton acted as the authorized agent of Reuben.

6. The children, before distribution, were tenants in common, and delivery to one is delivery to all; but they were all present or represented, and consenting to all the acts of distribution and delivery, and Mrs. Renfro's after claim was an after thought to screen the property from the debts of Reuben M. Renfro. 2 Blu. 399, note 12, 399; 4 Kent, 370.

7. A verbal gift is only good by delivery, and a gift by deed, under the statute, must be by will or deed proved or acknowledged according to its provisions; but a gift, not executed, becomes a contract if it be on sufficient consideration, and the nearness of relationship was sufficient to turn] the gift (if such relinquishment were one) into a contract which the party might be compelled to execute. Stat. of 1835; Slaves, art. 3; 2 Blu. 441, 444, 446; Fraudulent Conveyances, page 526, sec. 4; 3 Litt. 278.

8. If possession accompanied the deed, it was unnecessary for the deed to be recorded.

Possession was clearly proven to have accompanied the deed, which is recited in the deed, which is the best evidence of the facts which it recites, as every person is estopped from denying that which he has declared under seal, and this deed declared "that to the above named children I have given the following lot of negroes to be by themselves distributed among themselves, with instructions that each one of them shall receive an equal portion." 9 Mo. Rep. 156, Dickenson vs. Anderson.

9. The deed was delivered, with the consent of the legatees, to Elijah Stephens for safe keeping. He produced it on a former trial and left a copy with the clerk. He had notice to produce it on the last trial; he could not find it but was confident it was in the hands of the legatees, or one of them. Under these circumstances, the copy left by said Stephens with the clerk, and proved to be a true copy, ought to have gone to the jury. 1 Starkie, 437, 439.

10. It was a palpable case of premeditated fraud, and there was sufficient latitude in the instructions, and the evidence was abundant to warrant the finding of the jury; therefore the court exercised its discretion unsoundly in setting aside the verdict of the jury, and in granting a new trial, and also in dismissing the proceeding on interpleader and discharging the obligation of Chloe Renfro on the attachment bond.

LEONARD, for defendant in error.

1. The death of the defendant in the original suit dissolved the lien of the attachment, and

therefore the further prosecution of the claim on the part of the claimant would have been a nugatory act, and of course the court properly stayed any further proceeding in the matter. Swearingen vs. Administrator of Eberius, 7 Mo. R. 421; Statute of 1st Feb. 1836, title "Executors"; Revised Statutes of 1835, title "Administration," art. 4; Revised Statutes of 1845, title "Administration," art. 2, sec, 54, 55 and 56.

2. The granting of a new trial is not matter for error.   Emmerson vs. Harriet, 11 Mo. Rep. 413.

3. If it be, the court cannot see that there is any error in the allowance of the new trial in the present instance, as it does not appear from the bill of exceptions what evidence was offered by the claimant and rejected, or that there was no evidence so offered and rejected.

4. The verdict was rightly set aside.


NAPTON, J., delivered the opinion of the court.

In the case of Swearingen vs. adm'rs of Eberius (7 Mo. Rep. 421) the court quashed a fieri facias against the attached property and left the plaintiff to proceed with his judgment in the county court.   No opinion was designed to be given in that case, by either Judge Scott or myself, in relation to the lien of an attachment or a judgment.   I was not present when the opinion was filed, and Judge Scott filed a note of the ground upon which we put the case.   In the subsequent case of Prewitt vs. Jewell, the point in relation to the lien of a judgment came up directly, and Judge Scott did then come to the conclusion that the lien of the judgment was lost by the death of the judgment debtor, so that if it had been deemed necessary in the case of Eberius' adm'r vs. Swearingen, a majority of the court would doubtless have held in that case that the lien of the attachment was gone.

In this case of Swearingen vs. Eberius' administrator, the defendant died before any judgment, and the administrator appeared to the action and a judgment was rendered against him.   All that the court was called upon to do in that case, was to quash the execution, and this was done.   The judgment being against the administrator, was still available as a general judgment, and the plaintiff only lost his priority of lien upon the property attached.

The present case is somewhat different.   There is here a judgment against the deceased, without any personal service, and the defendant died after this judgment.

The 17th section of the attachment law declares the effect of a judgment by default.   It declares "such judgment shall bind only the property and effects attached, and no execution shall issue against any other property of defendant nor against his body, nor shall such judgment be any evidence of debt against the defendant in any subsequent suit."

Harrison vs. Renfro.

It is obvious from this provision, that this judgment by default cannot be made the basis of any proceeding in the county court. It is equally clear, that the court could not proceed and make the judgment a final one against a dead man. Nor, if such a judgment could have been rendered, could any execution have issued under the laws of this State.

Of what avail, then, can it be to proceed with the interplea? So far as the question relative to the lien of judgment is important, our statute has stepped in and pointed out a mode in which that lien is retained and enforced. But the lien of an attachment has not been provided for. It is obviously a *causus omissus*.

What power has this court, or any court of chancery, to remedy this defect? It is a mere statutory remedy to enforce a right, and the statute must be pursued. If the law is defective, the legislature can alone supply the defect. The ordinary mode of enforcing the right is still open to the suitor. The action is not lost. The suit can be revived against the administrator, and the question of title can be as well tried in such a proceeding as in the present. Nothing is lost but the lien on the specific property attached, and as the supposed owner is dead, and incapable of further fraud or injustice, this may be a very unimportant matter to the plaintiff. The circuit court merely dismissed the interplea for the plain reason, that its further investigation could lead to no practical result. The plaintiff may still proceed with his action; have it revived against Renfro's administrator, and if there be no prior creditors, have the same question of property as advantageously adjusted under our administration law, as he could have in this interplea.

Judgment affirmed.

BIRCH, Judge, dissenting.

Harrison sued Renfro, by petition in debt, and attached two slaves in the possession of his mother, the defendant here. Upon proof of publication, at the April term, 1846, he obtained judgment by default against the original defendant, and also against the defendant here, upon her interplea. The verdict and judgment thus obtained against Mrs. Renfro having been reversed by this court at the January term, 1847, a second trial of the issue between her and the plaintiff took place at the spring term, 1848, and resulted again in a verdict against her. A new trial was granted, however, the propriety of which the state of the record does not enable us properly to consider. The defendant in the original suit, and against whom the judgment by default for the debt and damages continues unreversed, having died in the month of May,

55

1847, at the October term, 1848, the interpleader moved the court to stay all further proceedings and allow her the possession of the attached slaves. The court having adjudged accordingly, and dismissed the suit, the plaintiff excepted, and has brought the case here.

As reliance to sustain the judgment below seems mainly to be cast upon the opinion of a former bench of this court, in the case of Swearinger vs. the administrator of Eberius, an expression of the respectful disconcurrence which is entertained with the reasoning and conclusion of the able judge who prepared it, might perhaps well enough be foregone by demonstrating the want of sufficient analogy between that case and the present one, to invest it with the authority here claimed for it. It is, however, deemed most appropriate to remark, that being unable to perceive less legal merit in commencing and maintaining a proceeding by attachment than in the more ordinary manner, any valid reason why such a suit should not, in the very words of the statute which authorizes it, "be proceeded on to final judgment in like manner as in ordinary actions," has not been to my mind rendered apparent by the argument here. It is true that no *execution* could issue against a deceased defendant, but that, it is apprehended, does not meet even the *general* question, much less the special one now under consideration. Unless indeed equity would be powerless, after years of diligence and expense, to enforce a lien thus sought to be perfected, it is of course readily perceived how the final *judgment*, which is alone sought, might be thereby rendered available to the plaintiff. The dismissal of such a suit, consequently even had *no* judgment been rendered against the original defendant, could alone be predicated upon a more restricted estimate of the powers and duties of a chancellor, than is entertained by the author of this dissent.

In this case, however, there was and is a specific and formal judgment against the *original* defendant, so that the *only* question which remained for adjudication, at the time the suit was dismissed, was between *living parties* on the interplea of the defendant here. The court before whom that issue was pending, was certainly not only *competent* to determine it, but, it would seem, even peculiarly appropriate that it should retain the suit for the purpose of doing so. It would thereby, not only more readily than in any other manner, settle the question as to the ownership of the property, thus removing the impediment which would otherwise exist to a safe and proper administration upon the effects of the deceased, but if the verdict of the jury was again adverse to the claim of the defendant; again found the property to have been properly attached by the plaintiff, and of course subject

to his lien, the 54th, 55th, and 56th sections of the 2nd article of the administration law, would furnish either to the administrator in discharging, or to the chancellor in enforcing it, an appropriate analogy, and a safe and an equitable guide.

It is thought, therefore, for the reasons thus stated, that the judgment of the circuit court should be reversed, and the cause remanded for the further and final proceedings thus intimated.