# REPORTS OF CASES

DETERMINED IN

# THE SUPREME COURT,

## JANUARY TERM, 1866.

## BENJAMIN F. MYERS *v.* REBECCA A. MOTT, ADMIN-ISTRATRIX OF THE ESTATE OF W. A MOTT, DECEASED.

DEATH OF THE DEFENDANT DURING THE PENDENCY OF AN ACTION.—In an action to recover judgment on a promissory note, the suggestion of the death of the defendant, and the substitution of his administrator, and the continuance of the suit against him, subjects the proceedings to such rules of the Probate Act as are applicable to proceedings for the collection of claims against an estate of a deceased person.

JUDGMENT AGAINST AN ADMINISTRATOR.—Where the only cause of action is the indebtedness of the estate of the deceased to the plaintiff, a judgment *in personam* cannot be rendered against the administrator.

JUDGMENT AGAINST ADMINISTRATOR ENFORCING ATTACHMENT LIEN.—If the defendant dies after the service of summons and the levy of an attachment on his property, and before judgment, and the administrator is substituted, and the action continued against him, the Court cannot render a judgment enforcing the lien of the attachment by a sale of the attached property, and an application of the proceeds to the satisfaction of the demand.

ENFORCEMENT OF ATTACHMENT LIEN.—An attachment lien upon property can be enforced only by a sale of the attached property under execution.

DEATH OF DEFENDANT DESTROYS ATTACHMENT LIEN.—If the defendant die after the levy of an attachment upon his property, and before judgment, his death destroys the lien of the attachment, and the attached property passes into the hands of the administrator, to be administered on in due course of administration.

APPEAL from the District Court, Fourteenth Judicial District, Placer County.

The facts are stated in the opinion of the Court.

*P. L. Edwards,* for Appellant. ·

The attachment was dissolved by the death of the debtor. The statute creating the remedy is in derogation of the common law and must be strictly construed.

The whole policy of the law is to the effect that the property of a decedent should be distributed pro rata and according to *class,* and not *in invitum* as now sought.

The law expressly declares that " no sale of any property of an estate of a deceased person shall be valid unless made under an order of the Probate Court, except as otherwise provided in this or other Acts." (Belknap's Probate, Sec. 148.)

Upon the question of a dissolution of the attachment by the death of the defendant, Mr. Edwards cited *Paneost* v. *Washington,* 5 Cranch, 707 ; *Sweringen* v. *Administrators of Eberius,* 7 Mo. 421 ; *Harrison* v. *Rufus,* 13 Mo. 446 ; *Kennedy* v. *Raquet,* 1 Bay, 434 ; Sargent on Attachments, 136 ; 4 Dallas, 60 ; *Parsons* v. *Merrill,.* 5 Met. 359 ; and Drake on Attachments, Secs. 433 to 435.

*Charles A. Tuttle,* for Respondent, upon the question of the enforcement of the lien by a sale of the attached property, cited *Thatcher* v. *Bancroft,* 14 Abbott's P. R. 248. He also argued that the Court having acquired jurisdiction before the death, the sixteenth section of the Practice Act, declaring that actions shall not abate by the death, came into play ; that the action which was continued against the administrator was the action commenced against the intestate, and not the action contemplated by the one hundred and fortieth section of the Probate Act ; that section one hundred and forty referred to actions commenced against the administrator, as was held in *Thatcher* v. *Bancroft,* where the Court did not have jurisdiction before death ; that the continuation of the action against

the administrator after Mott's death, had the same effect as a continuation against a successor in interest of the defendant in property would have; that the judgment must be of any particular character lest the attachment lien be lost, was not required by any provision of the Practice Act; that the language of the Act was general.

"The plaintiff may have the property of the defendant attached as security for the satisfaction of *any judgment* that may be recovered." (Practice Act, Sec. 120.) "The property attached shall be retained by the sheriff to answer *any judgment* that may be recovered in the action." (Practice Act, Sec. 130.) "If judgment be recovered by the plaintiff, the sheriff shall satisfy the same out of the attached property." (Practice Act, Sec. 132.) That there was evidently a mistake in the supposition that the Act anywhere required for this purpose that the judgment must be against the original defendant in the action. That the only judgments upon which executions were prohibited by the Probate Act, were those mentioned in the one hundred and fortieth section, and those were judgments in suits commenced against administrators, and not judgments in actions commenced and jurisdiction acquired before death, but continued against them; that the two hundred and tenth section of the Practice Act provided for executions in every conceivable case, and among others for executions against real or personal property in the hands of personal representatives, heirs, etc.; that section two hundred and seventeen provided that " all property and rights of property seized and held under attachment in the action shall be liable to execution." If liable to execution, was not the Court vested with the power to order one to be issued ? He also cited *Conara* v. *The Atlantic Insurance Company*, 1 Peters, 386 ; 2 Cranch, 358 ; 3 Cranch, 73 ; 8 Cranch, 431 ; 2 Sandford, 528 ; 1 McLean, 95 ; 7 Peters, 464 ; and 7 Metcalf, 340,. upon the question of a dissolution of the attachment by the death of the defendant.

46

By the Court, RHODES, J.

At the commencement of this action, which was brought upon several promissory notes, a writ of attachment was issued and levied upon certain real and personal property of the defendant. After the service of the summons and the attachment, but before the time for answering had expired, the defendant died intestate. His widow was appointed as administratrix of his estate, and upon his death being suggested, the action was continued against his administratrix. The notes were presented to the administratrix for allowance as claims against the estate, and were rejected; and, although she subsequently and before judgment indorsed her allowance on the notes, that will not affect the merits of the case, but would go only to a question of costs. The Court having denied the defendant's motion for a dissolution of the attachment, rendered judgment for the plaintiff, which was substantially as follows: That the plaintiff recover of the defendant the amount of the promissory notes, to be paid in the gold coin of the United States; that the Sheriff proceed to sell in like manner as under execution the personal property taken under the attachment; that if the personal property should be insufficient for the satisfaction of the judgment, he should in like manner proceed to sell the real property attached; that if the proceeds of such sales should be insufficient to satisfy the judgment, the balance of the judgment be paid in due course of administration; and that any surplus remaining after the satisfaction of the judgment out of the proceeds of the sales, be paid to the administratrix.

The defendant appeals from the judgment, and from the order refusing to dissolve the attachment. The order is not an appealable order, (*Alender* v. *Fritz*, 24 Cal. 447,) but all the material points made in regard to the attachment arise also in the appeal from the judgment.

*Form of judgment against an administrator.*

The first question we shall consider relates to the form in which the judgment for the amount due upon the promissory notes ought to be rendered. It will be seen that the complaint is, in substance, the usual complaint upon a promissory note in a suit by the payee against the maker, and contains no allegations entitling the plaintiff to any relief beyond the ordinary judgment *in personam.*

The suggestion of the death of the maker of the notes, and the substitution of his administratrix, and the continuance of the suit against her, subjected the proceedings to such rules of the Probate Act as are applicable to proceedings for the collection of claims against an estate of a deceased person. It was in this view that the plaintiff presented his claim to the administratrix for allowance. An administratrix is the creature of the Probate Act, and her liability must be measured by that Act. There is no provision in the Act subjecting her to a judgment *in personam,* upon the sole ground that the estate of the deceased is indebted to the plaintiff. Under any system with which we are acquainted, the further allegation of assets, *a devastavit,* or some other ground of personal responsibility, is necessary to support such a judgment. But this point is settled by section one hundred and forty of the Probate Act, which provides that " the effect of any judgment rendered against any executor or administrator, upon any claim for money against the estate of his testator or intestate, shall be only to establish the claim, in the same manner as if it had been allowed by the executor or administrator, and the Probate Judge, and the judgment shall be that the executor or administrator pay, in due course of administration, the amount ascertained to be due."

The judgment should have been rendered in the form indicated in that section, for the section is mandatory, and specifies the only judgment that may be rendered against the executor or administrator, on a claim against the estate.

### Judgment enforcing attachment lien.

The next question is whether that portion of the judgment ordering the property that had been attached, to be sold for the payment of the judgment, is authorized by law. No provision of the Practice Act is cited that justifies such an order. When the judgment is rendered against the debtor in his lifetime, we find no authority for an order of that character in an action of the nature of the one before us, and it is difficult to see how the mere fact of the substitution of the legal representative in the place of the debtor could authorize the order without the aid of a statutory provision permitting it. The principle is cardinal and uniform that the judgment for the plaintiff must be founded on and authorized by the allegations of the complaint. The attachment and levy formed no part of the pleadings and were not competent evidence of any fact stated therein, but came before the Court incidentally and on a motion that had no relation to the merits of the action. The order is in its nature a decree enforcing a lien, and is as clearly unauthorized as would have been a decree enforcing a vendor's lien, if it had happened in the case that the plaintiff in proving the consideration of the notes had shown that they were given for the purchase money of certain real property belonging to the estate of the intestate. The impropriety of the judgment is made manifest by supposing that a portion of the attached property is exempt from execution, that another portion is the separate property of the widow of the deceased, and that a portion or all of the real property attached constituted the homestead of the deceased and his wife. Certainly those questions could not be tried without proper issues were framed, and it is impossible to see how the administratrix could have raised them in the suit on the notes, unless she is required to answer not only the complaint, but the Sheriff's return to the attachment also. This she would be bound to do or be precluded thereafter from asserting her claim to the property, by the judgment of the Court ordering the property to be sold, if such judgment, based upon the single fact that

the property has been seized under attachment, can be maintained. The Court, in rendering judgment in an action in which an attachment has been procured and served, has no duty to perform in reference to the attachment proceedings. The Sheriff does not act in obedience to the judgment, but to the behests of the statute, in enforcing the attachment lien, by the sale of the property attached.

This virtually disposes of the appeal, but to rest the cause here would leave the real point of controversy untouched, and it would necessarily arise on further proceedings, surrounded, perhaps, with additional difficulties. The question is, whether the attachment lien survives, in case of the death of the defendant, before the expiration of the time for filing his answer in the action in which the attachment issued.

An attachment is a process under which the debtor's property may be seized and held as security for the satisfaction of any judgment that may be recovered against him in the action, unless he give security for the payment of the judgment, in the manner provided by the statute. Its scope, purpose and effect; its capacity to create a lien; the efficacy, duration and the mode of enforcement of the lien, are not other or greater than the statute has prescribed. The plaintiff cannot claim as matter of right the benefit of the attachment, as something growing out of or necessarily connected with the contract, as he may the benefit of an action to recover his debt; for the attachment is merely an auxiliary to the action, and the Legislature may give, withhold or limit it, at their pleasure, without impairing any substantial right of either party. The lien acquired by means of the attachment does not necessarily attend the action, without regard to the judgment that may be rendered. Its purpose is to secure the payment of the judgment, and this is accomplished by its holding the property until the judgment is rendered—and in case of real property, until the judgment is or may be docketed—so that the attached property may be taken and sold under an execution to be issued upon the judgment. No property may be taken in attachment that is not liable to seizure under the execution

when issued; and the only way in which the levying of the attachment upon the property operates as security for the satisfaction of the anticipated judgment, is by its capacity to hold the property to await the execution to be issued. This is necessarily implied by section one hundred and thirty-two, providing for the sale of the attached property, and no other mode than a sale under execution is provided by the statute, for enforcing the attachment lien upon property held under the writ. Property that has been converted into money, because the interests of the parties required its sale while held under attachment, forms no exception to the usual course of proceedings respecting property held under attachment, for the money in the officer's hands, though not required to be levied upon under the execution, because not required to be sold, can be applied to the satisfaction of the judgment only when the plaintiff is entitled to an execution, and it is appropriated in the same manner as when made under the execution. When the action is of such a character, or when its condition has become such, by reason of a change of parties or other cause, that a judgment *in personam* cannot be rendered against the defendant, an execution in the usual form, commanding the Sheriff to satisfy the judgment by a seizure and sale of the personal and real property of the defendant, is not authorized to be issued. A personal judgment against the administratrix in this case was not the kind of judgment, as we have seen, that the statute required or permitted, but it should have been, that the amount ascertained to be due to the plaintiff be paid by the administratrix in due couse of administration. A payment in the due course of administration, means the payment by the legal representative of the deceased, acting under the orders of the Probate Court, out of the assets of the estate of the deceased, and in the manner and order that other debts of the same rank are by the Probate Act required to be paid. It will not be contended that a judgment in that form, authorized the issuing of an execution; and, indeed, it is directly forbidden by section one hundred and forty of the Probate Act, to be issued.

*Death of defendant destroys the lien of an attachment.*

It necessarily results from these statutory provisions and legal principles, defining the character and purpose of the attachment lien and the mode of its enforcement, that whenever the case is such that a judgment cannot be legally rendered, that will authorize an execution against the personal and real property of the defendant, the attachment lien at once ceases. There is nothing in the Practice Act that countenances the idea that the attachment is of the nature of a common law distress of the defendant's property, to be held until he pays the plaintiff's demand, but it is held in order that it may be subject to execution. When that purpose is impossible of accomplishment the right to hold the property for that purpose ceases.

The effect on the attachment, of the death of the defendant, before judgment, is considered in several cases cited in Drake on Attachment, (Sec. 433,) and in most of them it is held that the death of the defendant dissolves the attachment. The statutes of the several States providing for an attachment differ in their structure, but that of many of the States have the same general purpose as that of this State, and the authorities, though not conclusive because of the difference between the statutes, aid in some measure in arriving at a proper construction of our own statutes. (See *Davenport* v. *Tilton*, 10 Met. 320; *Sweringen* v. *Eberius*, 7 Mo. 421; *Harrison* v. *Renfro*, 13 Mo. 446; *Kennedy* v. *Raguet*, 1 Bay, 484; *Crocker* v. *Radcliff*, 1 Const. R. S. C. 83.)

Some of the provisions of the Practice Act and of the Probate Act support this theory in respect to the attachment lien. It is provided by section two hundred and two of the Practice Act, that if the defendant die after verdict or decision upon an issue of fact, and before judgment, the Court may render judgment, but it shall not be a lien upon the real property of the defendant, but shall be payable in the course of administration on his estate. This would be a very incongruous provision, if, while a judgment lien was prohibited, an

attachment lien was permitted to continue in force. And besides this, the creditor, by means of the attachment, might nullify the provision for the payment of the judgment in the due course of administration ; for if the assets consisted of personal property only, he would be enabled to withhold from the administrator, all the property with the proceeds of which the judgment might be paid, while the creditor was at the same time without power to issue an execution, under which to sell the property and make his debt.

By section two hundred and fifteen of the same Act, as it stood previous to April 4th, 1864, execution against the property of a defendant who had died after judgment, might be issued upon the permission of the Probate Court; but by the amendment of 1864, in force when the judgment in this case was rendered, authority is given to issue execution only in case of judgments for the recovery of real or personal property. This negatives the right to any other description of an execution, and when considered in connection with the provisions of the Probate Act treating the judgment as a claim, it, by implication, clearly forbids the issuing of an execution in case the defendant dies, not only before judgment, but at such a time in the progress of the action that a judgment could not have been rendered against him. And besides this, section one hundred and forty of the Probate Act directs that no execution shall issue upon a judgment against the executor or administrator upon a claim against the estate, and that the judgment shall not "create any lien upon the property of the estate, or give the judgment creditor any priority of payment."

The provisions of the Probate Act providing for the order of payment of the claims against the estate (Section 239) are also conclusive upon this point. The section is as follows: " The debts of the estate shall be paid in the following order: First—Funeral expenses. Second—The expenses of the last sickness. Third—Debts having preference by the laws of the United States. Fourth—Judgments rendered against the deceased in his lifetime, and mortgages, in the order of their

date.   Fifth—All other demands against the estate." The debt in this case is not included in either of the first four classes, and must fall within the fifth class, otherwise it is not entitled to payment out of the estate.   No preference is given to any debt of that class over others of the same class, and to make it clear that no preference among the debts of any class, except those in the fourth, was intended, the next section declares that if the estate be insufficient to pay all the debts of any one class, the fund must be distributed pro rata among all the debts of that class.   These provisions are utterly inconsistent with the proposition that the attachment lien continues, notwithstanding the death of the debtor, for if it is a subsisting lien the debt secured thereby must of necessity be entitled to a preference over other debts of the same class.

The plaintiff's position is not strengthened by section one hundred and eighty-six of the Probate Act.   That section, among other things, provides that the administrator upon making sale of the land of the deceased which is subject to a mortgage or other lien, shall apply the purchase money, after paying the expenses of the sale, first to the satisfaction of the mortgage or lien.   Before he could claim the application of the purchase money to his debt in case of a sale under the order of the Probate Court, he must prove the very point in controversy—that the attachment continues a lien on the land in the hands of the administrator.   He cannot claim the benefit of this section to sustain the lien upon the personal property, for there is no provision that the proceeds of the sale of such property when sold by the administrator shall be applied to discharge a lien.

Here no lien can be acquired by means of the judgment, and no execution is permitted, and the purpose of the attachment becoming impossible of accomplishment, by reason of the death of the defendant, it must of necessity, upon the happening of that event, have ceased to be a lien.   Assuming that the attachment lien is included in the term "lien" as employed in section one hundred and eighty-six, we are led to this absurd

47

conclusion, that the administrator of an estate may be compelled by the Probate Court to pay a demand that he was then resisting in another Court, and might ultimately have materially reduced or entirely defeated.

It would seem that if the Legislature had intended that the lien of an attachment should be preserved in the event of the death of the defendant before judgment, while, at the same time, denying to the judgment the power to create a lien upon the property of the deceased, and forbidding the issuing of an execution upon the judgment, they would have manifested their intention by some unequivocal provision of the statute, and not have left it to be gathered by doubtful implication.

Judgment reversed and the cause remanded, with directions to enter judgment for the plaintiff for the amount due upon the promissory notes sued on, to be paid in due course of administration, in the current gold coin of the United States.

SHAFTER, J., dissenting.

The plaintiff sued W. A. Mott in his lifetime on two promissory notes, payable, severally, in gold coin of the United States. The summons was accompanied by a writ of attachment, which was duly levied upon certain real and personal property of the said defendant, March 9th, 1864, on which day the summons was also served. On the day following Mott died intestate, and thereafter on the 3d of May, 1864, the appellant was, on her own motion, substituted as defendant, it appearing that she had been appointed as administratrix of the estate of the deceased. Such proceedings were thereafter had in said action that judgment was entered in favor of the plaintiff. Among other special provisions contained in the judgment was one directing the Sheriff to sell the property attached in like manner and upon like notice, as is required by law in sales of personal property on execution; the proceeds to be applied in satisfaction of the judgment; and in case of a surplus, the surplus was to be paid to the

administratrix, and if there should be a deficit, it was ordered to be paid in due course of administration.

It is insisted that that portion of the judgment which contains these special directions, is erroneous; and the objection is put upon the ground that the attachment was dissolved by the death of Mott.

The argument for the appellant, in so far as it goes upon considerations of convenience, is entitled to very little weight, if the meaning of the statutes by which our decision must be controlled is reasonably clear; and the same may be said as to the cases cited from other States, for those decisions are in elucidation of systems differing to a greater or less extent from our own.

By the common law, a suit was abated—that is, ended, by the death of either of the parties to it, and it could not be revived; but by the sixteenth section of our Practice Act it is provided that the action, if the cause of it survive, shall not abate by the death of a party to it, but may be continued by or against the personal representative on motion. When an action, in such case, has been so continued, all rights involved directly in the suit, and all collateral remedies to which the surviving litigant may have entitled himself under the law, are secured to him as effectually as though the death had not occurred.

In *Moore* v. *Thayer*, 10 Barb. S. C. 259, an attachment had been levied, and summons issued before the death, but there had been no personal service, and the order of publication had been only partially complied with; still it was held not only that the Court had acquired jurisdiction of the action, but also that the plaintiff had acquired a provisional lien upon the defendant's property, which lien the code was intended to preserve; and it was held that the lien should be enforced. The one hundred and twenty-first section of the New York Code, and the sixteenth section of our Practice Act, are in substance the same. The objection that the sixteenth section continues the "action," but not the provisional remedy, is opposed not only to the above decision, but to the maxim

that the accessory follows its principal.    It was held in *Low* v. *Adams*, 6 Cal. 281, that "the remedy by attachment" is not a distinct proceeding, but an adjunct, or a proceeding auxiliary to the action at law, designed for the purpose of securing the property of the debtor to answer the judgment which may be obtained.    This is apparent from the language of our statute, which provides "that the plaintiff, at the time of issuing the summons, or at any time thereafter, may have the property of the defendant attached as security for the judgment," etc.

Again, the plaintiff by his attachment acquired a lien, differing in origin to be sure, but in its essential nature like the lien acquired by mortgage or pledge.    (14 N. H. 509; 10 Met. 320; 1 Zabriskie, 214; 10 S. & Mar. 348; 1 Day, 117.) And it was held in *Isaac* v. *Swift*, 10 Cal. 71, that "where a lien is created by the express words of a statute, express words will be required to continue it beyond the time specified;" and it may be added that if the action in which an attachment is made continues, then the attachment and the lien acquired by it must be continued by parity, unless dissolved by some statute provision.    (Drake on Attachment, Section 400, and cases there cited.)

There is nothing in our statute law connecting with the death of a defendant in an attachment suit, any such consequence.    Holding, as I do, that the provisional remedy in case of death is kept on foot by a continuance of the "action" under section sixteen, it follows that the consequence named must be considered as expressly inhibited in effect, by sections one hundred and twenty-three, one hundred and twenty-four, one hundred and twenty-five, one hundred and twenty-six, and one hundred and thirty-two of the Practice Act, providing for the custody and final disposition of the property as well as for its seizure in the first instance.    It will be seen that the question is put upon that portion of the Practice Act relating to attachments, and upon a construction of section sixteen, providing for a continuance of actions in case of death.    The system for the collection of debts by attachment, and the pro-

bate system, though interblended to some extent, are distinct
from each other in the main.   Each goes upon its own sepa-
rate conditions and theories, and all apparent conflict between
the two may be harmonized by keeping that fact steadily in
view.   The provision of the Practice Act requiring the Sheriff
to keep personal property attached in his custody, and the
provision of the Probate Act (Section 114,) giving to the rep-
resentative of a person deceased the right to the possession of
all his property, may both have an operation ; and so as to
those sections of the Probate Act (Sections 140, 141,) fixing
the effect of a judgment against an executor or administrator,
and those sections of the Practice Act which require with
legal positiveness that a judgment rendered in an attachment
suit should be satisfied out of the property attached.   This
method of exposition was repeatedly recognized by the late
Supreme Court.   In *Cowell* v. *Buckelew*, 14 Cal. 641, it was
held that the one hundred and forty-first section of the Pro-
bate Act applies only to such money judgments as require,
whether in whole or in part, for their satisfaction, execution
against the general property of the deceased.   And it was fur-
ther held in the same case that the one hundred and forty-
eighth section, which provides that " no sale of property of an
estate shall be valid unless made under order of the Probate
Court," applies only to sales by executors and administrators.

The probate system in the matter of the payment of debts,
is, with the exception of certain preferred claims, founded
upon the principle of *pro rata*, while the system of the Prac-
tice Act recognizes the principle of priority of right in an
attaching creditor, confining the priority however to the prop-
erty covered by the attachment.   Many objections have been
urged against the latter system, but the Legislature in adopt-
ing it overruled them all, and its supposed inequitable opera-
tion in cases like the one at bar, is neither greater nor less
than that which follows its action generally.   The Legislature
in providing in effect that an attachment may be enforced in
cases where a defendant dies pending the litigation, has merely
included within the operation of the rule a case to which the

principle on which the rule is founded clearly extends. When the people become dissatisfied with any of the consequences of the system, they will probably have become dissatisfied with all the consequences, and abandon the system.

As execution could not be enforced against the estate at large, but only against the property attached, it became necessary that a special order should be entered, limiting the proceedings under the execution to that property. (*Kittredge* v. *Warren*, 14 N. H. 509.) The judgment that if the proceeds of the sale shall be insufficient to satisfy the judgment, the balance shall be paid in due course of administration, is within the spirit of the one hundred and fortieth section of the Probate Act, and at the worst is but surplusage.

On these grounds, I dissent from the prevailing opinion.

SAWYER, J., also dissenting.

For the following reasons, in addition to those stated in the opinion of Mr. Justice SHAFTER, I am unable to concur in the views expressed by a majority of the Court upon the principal question involved in the case :

In many of the States the process of attachment was originally adopted as a means of compelling the appearance of non-resident and other debtors, upon whom the ordinary process of the Courts could not be served. Upon the appearance and putting in of bail in the manner required by the practice then in force with respect to other process, the attachment was dissolved. In many instances the remedy was extended to cases where debtors were fraudulently concealing, removing or otherwise disposing of their property with an intent to defraud their creditors. In California the remedy has been extended over a wider field, and it seems to proceed upon a theory different from the attachment laws of any other State. The design of our law seems to be, not merely to reach non-resident and absconding debtors, or to circumvent fraud, but to afford the creditor, upon the statutory conditions, a security

for every demand not otherwise secured, arising upon contract for the direct payment of money made in the State, in which there has been a default in payment.   Security to the vigilant seems to be the leading idea upon which the law is framed. The moment the attachment is levied, a lien upon the property attached is acquired.   The lien becomes specific, and the party acquires a right to have any amount that may be found due upon the contract satisfied out of the specific property.   It is a right vested upon the conditions prescribed by the statute. The law favors the diligent, and not those who sleep on their rights.   The plaintiff incurred the costs of a suit to secure the right given by the statute, and by this means acquired for himself, to the exclusion of all others, the statutory lien on the defendant's property, and a right to be first paid out of its proceeds.   This right became vested, and being once vested should not be divested, unless by virtue of some express statutory provision, or by necessary implication from provisions bearing upon the subject matter.   I have not found any express provision of the statute to the effect, that the attachment shall be dissolved by the death of the defendant before judgment.   If any such result can be deduced from the various statutes, it must be by remote, and not very apparent, or satisfactory inferences.   That a specific lien has been once secured, there can be no doubt.   "I see no reason why the lien acquired by attaching a particular piece of land should not be considered as much a specific lien, as if acquired by the voluntary act of the debtor."   (*Carter* v. *Champion*, 8 Conn. 559.)   "An attachment constitutes a lien—a real interest in the land, which may be followed up to a perfect title."   (Mr. Chief Justice Shaw, in *Smith* v. *Bradstreet*, 16 Pick. 265.)   It is well settled, that the levy of an attachment constitutes a lien within the meaning of that term as used in the Bankrupt Act of 1841.   (*Kittredge* v. *Warren*, 14 N. H. 510 ; *Vreeland* v. *Bruen*, 1 Zab. 222 ; *Davenport* v. *Tilton*, 10 Met, 320 ; *Peck* v. *Jenness*, 7 How. U. S. 612.)   The observations of Mr. Chief Justice Parker, in the first case cited, are not inappropriate to the question now under consideration.   He says (14 N. H.

530): " So far as it relates to the question whether an attachment is a lien or security, it is not necessary to add anything to what has been already said upon that subject. If this lien or security were contingent or conditional, it is not perceived why that should take it out of the express language of the proviso, which includes all liens and securities, valid by the laws of the State. The fact that it is dependent upon, and may be defeated by a contingency, does not make it anything the less a lien or security so long as it exists. But the existence of the lien or security is, in our view, in no way contingent, conditional or inchoate. Its existence does not depend upon the judgment. It exists, in its full force, from the moment the attachment is made, as much so as a lien by judgment, upon the rendition of the judgment, in the States where that security is recognized. As we have already seen, it fastens itself upon, and binds the property at once, giving priority of right, and, in the case of personal property, authorizing the Sheriff, for the benefit of the creditor, to hold the possession, to maintain actions, and in some cases even to sell and dispose of the property itself, before either a default or judgment. It is originated by the suit, and sustained by the suit, but it is no part of it. It can only be made available through a judgment, but the judgment neither changes its nature nor determines its validity; nor does it operate to perfect the attachment. The judgment establishes the existence of the demand upon which the attachment is predicated, and the security taken; whereas it was before only alleged, and presupposed for the purpose of the security. The security is not inchoate, but it is conditional in the sense that liens by judgment are conditional. It depends upon contingencies whether it will ever be made available to the creditor, and so it is with liens by judgment, where there is a period when they cease to exist, if the judgment creditor has not proceeded to seize the property. The continuance of a lien by attachment depends upon one contingency beyond liens by judgment, which is, that the plaintiff sustains his suit; but the fact that the law authorizes it to be fastened upon the property *in*

*invitum*, before the existence of the demand is admitted or ascertained, and that it may be defeatad and dissolved if it shall appear that the plaintiff has no claim, neither disproves its existence as a security before the demand is ascertained, nor shows that it did not confer vested rights from the moment it was taken.   A pledge to secure all demands which may be due from the pawner to the pawnee is not the less a pledge, or the lien less perfect, because it may appear, upon an accounting, that nothing is in fact due.   And an accounting, by which the pawner is found indebted in a certain sum, has no operation to perfect the pledge, although it ascertains the amount for which it stands as security.   Nor does the expiration of the day of payment, by which the pawnee obtains a right to sell the pledge and apply the proceeds in satisfaction of his demand, perfect the security, although it gives an absolute right to sell the pledge, which did not exist before."

" Whether any lien will be available to the party entitled to it, is usually a contingent matter, dependent upon his pursuing the regular steps to enforce it."

If the existence of the lien does not depend upon the judgment ; if it exists in its full force from the moment the attachment is made ; if it fastens itself upon, and binds the property at once, giving priority of right ; if it is originated by the suit and sustained by the suit, but is not a part of it, it is certainly not affected or defeated by the subsequent death of the defendant, unless the suit itself abates, or that result is accomplished by, or plainly and necessarily inferable from, some positive statutory provision ; and in my opinion the provisions of the statute cited in the prevailing opinion cannot properly be so construed as to work such a result.   No allusion is made to attachment liens in any of those provisions.   They all apply to a different subject matter, and none of them appear to me to be inconsistent with the idea that the lien may survive. Under our statute (Practice Act, Sec. 16) the suit itself does not abate by the death of either party.   In all cases where· there is any occasion for it, the suit may be continued against

48

the representative of the deceased defendant. If the attachment is dissolved by the death of the defendant, it is not because there is any express provision to that effect, but it must be implied from the failure to make any express provision for subsequent proceedings to enforce the lien. After a careful examination of the subject my mind is forced to the conclusion, that the attachment having been levied, and a specific lien upon the property having been acquired during the lifetime of the deceased, the attachment was not dissolved, nor the lien discharged by the death of the defendant in the suit. Nor does it seem to me that the authorities cited in the prevailing opinion to sustain the opposite conclusion can have any influence in determining the question. Indeed, not much reliance seems to be placed upon them. The case of *Davenport* v. *Tilden*, 10 Met. 320, only decides, that an attachment of property upon mesne process constitutes a lien within the meaning of the term as used in the General Bankrupt Act of 1841, and that, when a discharge is set up as a bar to an action secured by a lien acquired through an attachment levied before the proceedings in bankruptcy were commenced, " the plaintiff may have a special judgment rendered, and an execution awarded against the attached property only." This case, so far as it has any bearing upon the questions now before us, appears to me to sustain the position maintained in this opinion, that there is a lien, and that a special judgment enforcing the lien may be rendered. I shall have occasion to refer to the case again. The cases in South Carolina of *Kennedy* v. *Raguet*, 1 Bay, 484, and *Crocker* v. *Radcliffe*, 1 Const. S. C. R. 83, depended upon different principles. The attachment law of South Carolina was only designed to compel the appearance of a non-resident, or absconding debtor. Upon his appearing and putting in bail, the attachment was dissolved. So, after putting in bail, if the defendant died, the suit abated and the bail was discharged; and the attachment simply stood in the place of bail, and was subject to the same incidents. The Court say, as the result of their reasoning in the latter case (1 Const. S. C. R. 87) : " From this view of

the Act, it seems evident that the death of the defendant must be material, and upon that event the *suit abated in the same manner as it would have done if he had given bail to the action.*" The object and scope of the attachment law of South Carolina was entirely different from that of ours. The same remarks are applicable, to some extent, to the statutes of Missouri, under which the remaining decisions referred to were made. The case of *Swearingen* v. *Eberius,* 7 Mo., did not involve the question, and only one of the Judges expressed an opinion on it, (see 13 Mo. 448) and he seemed to lay some stress upon the fact, that "the attachment is given against certain persons who by their conduct subject themselves to the suspicion of fraudulent conduct;" upon which he remarks: "And when the defendant dies, one would suppose that, as he is no longer able to defeat the just claims of his creditors, this lien of the attachment ought also to die." The Judge adds other reasons, applicable to judgment as well as attachment liens, and holds that, under the statute of Missouri, a judgment lien also dies with the defendant, and that, *a fortiori,* a mere lien without judgment dies. In *Harrison* v. *Renfro,* 13 Mo. 449, two of the Judges seem to have been of opinion that the attachment lien is lost by the death of the defendant, and that, "as the supposed owner is dead and incapable of further fraud or injustice, this may be a very unimportant matter to the plaintiff." They regard the failure to provide for the lien as a *casus omissus.* The other Judge dissents, and is of the opinion that a Court of equity has power to enforce the lien. The opinions of the Judges holding the lien to be lost are far from satisfactory to my mind. But, whether right or wrong, they do not afford any aid in the construction of our statute.

It is true that the attachment lien can only be made available through a judgment of some sort. But this is ordinarily equally true of a lien by mortgage, or a mechanic's lien. It is also true, that, in a case wherein the defendant dies pending the action, neither the Probate Act nor the Practice Act makes any specific provision for enforcing an attachment lien acquired in the action before the death of the defendant. Under sec-

tion two hundred thirty-nine of the Probate Act, if literally construed, the Probate Court could only pay the debt secured in the course of administration, without reference to the lien. Under that section only two kinds of liens are authorized to be paid, viz : "judgments rendered against the deceased in his lifetime, and mortgages in the order of their dates." Yet section one hundred thirty-three speaks of claims "secured by a mortgage or other lien." What other lien? There are many liens other than those authorized to be paid by any express provision of the Probate Act. What is to become of such other liens, if the fact that they are not specifically provided for, and that only certain specified demands can be paid, and in a prescribed order, is to prevent payment by the Probate Court? Are they to be lost to the parties holding such liens? The same argument by which it is inferred that the death of a defendant destroys an attachment lien would lead to the conclusion that all other liens, not specifically mentioned and provided for, become discharged by the death of the owner of the property upon which the liens are charged. So also, section one hundred eighty-six speaks of liens other than mortgages, and authorizes their payment; but the provisions are limited to liens on land. No provision whatever is made for liens on personal property. But it does not follow that there is no remedy, where none is expressly provided. In all cases where there is a valid lien, and no specific provision is made for giving it effect, the District Court, by virtue of its general jurisdiction over such matters, must have authority to enforce it. The District Court, I apprehend, would have jurisdiction to enforce a vendor's or mechanic's lien upon real estate after the death of the vendee, or owner, notwithstanding the Probate Court might pay it under the provisions of section one hundred eighty-six, as it now stands, upon the same principle that it could foreclose a mortgage under like circumstances; and I apprehend that a vendor or mechanic did not lose his lien by the death of the vendee, or owner before the recent amendment of said section authorizing its payment, notwithstanding there was no other provision authorizing such pay-

ment.   So, also, it would have jurisdiction to entertain a suit
to determine the rights of the pledgee, and order a sale of the
property pledged after the death of the pledgor; or to enforce
a lien of a party having property in his possession subject to
a lien for labor bestowed in making the article, or for repairs;
or the lien of an innkeeper or carrier.   The Probate Act, so
far as we are aware, makes no provision for the continuance
or payment of these classes of liens on personal property; yet
the party claiming the lien cannot be without a remedy in the
Courts when the owner happens to die.   All of these cases
are as clearly within the provisions relating to judgments, and
prohibiting the issue of executions, and prescribing the kind
of demands to be paid, and the order of payments, as are
attachment liens.   In none of these cases could a judgment,
in the ordinary form for the recovery of a money demand, be
entered, nor the ordinary execution in such cases be issued.
The judgment would be for the sale of the property and the
application of the proceeds to the payment of the demand, and
in a proper case, that any balance remaining unsatisfied be
paid in course of administration.   And the judgment would be
enforced in the same manner as in the case of a judgment
foreclosing a mortgage.   Upon the same principle, I can see
no good reason why the District Court has not jurisdiction to
enforce a lien acquired upon real or personal property in the
course of judicial proceedings, where the defendant in the
action dies after the lien has attached, and before judgment,
and no other specific remedy is provided.

The judgment can readily be adapted to the exigencies of
the case, and would be similar to a judgment for the enforce-
ment of other liens, and would be enforced in the same man-
ner.   The remarks of Mr. Chief Justice Shaw in *Davenport* v.
*Tilton*, cited in the prevailing opinion, are apposite in this
connection.   In that case, after the commencement of the suit
and attachment of the property, the defendant having procured
his discharge from all his debts under the general bankrupt
Act of 1841, plead such discharge.   The defendant having
been discharged from all his debts, including the debt in suit,

it was contended that no judgment could be entered against him; that no mode of enforcing the attachment lien was provided; that the lien was only security for any judgment that might be recovered in the action, and could not be made available except through a judgment; and as no judgment could be rendered upon a debt which had ceased to exist, the lien, even if excepted in terms in the statute, was necessarily lost.

The Chief Justice said (10 Met. 328–9): "This consideration leads to another rule of exposition, which is, *that when a statute confers a right, it confers all the necessary means by which such right can be established and made effectual.* The exception of liens, mortgages and securities on property is made for the benefit of the holders of such securities, and they are entitled to the use of the necessary legal means of making them available. If so, and if an attachment on mesne process is a lien or security on property, to be made available only by a judgment and execution of some kind, then the above proviso would in legal effect stand thus: Provided that nothing in this Act contained shall be construed to prevent an attaching creditor from obtaining such judgment and execution as may be necessary to give legal effect to his attachment on the property of the bankrupt, made before the proceedings in bankruptcy were commenced. But where such exception is founded on implication it must be a necessary implication, and will be extended no further than is necessary to give effect to the right reserved. The discharge will still have its full and complete effect, except so far as the existence and operation of a judgment may be necessary to enable the creditor to have a special execution awarded, and to take the attached property upon it. It would not have the usual attributes of a judgment as record evidence of a debt, on which an action will lie, and upon which the person of the debtor may be arrested, or other property than that attached taken in satisfaction. In all these respects, the discharge would still have its effect. It would be, though still in form a judgment *in personam*, in substance, and legal effect, a judgment *in rem*, binding the specific property attached."

And again, with respect to a special judgment and execution he says (pp. 330–1) : " If, therefore, we entertained more doubt as to the general question, we should strongly incline to the opinion that, under the circumstances of the present case, the plaintiffs would have a legal right to maintain their prior lien over the claim of another separate claimant who, if the plaintiff should fail, would hold the property against both the bankrupt and his creditors ; *and that the plaintiffs are entitled to such special judgment and award of execution as will enable them to maintain that priority.* (See *Storm* v. *Waddell,* 2 Sandf. 494.) Such special judgment, or special award of execution, although not frequent, is not unprecedented. The law having exempted the person of a debtor from arrest, after having taken the poor debtor's oath, leaving his property liable, the process may be varied accordingly. And, generally, where a party has a right which cannot be obtained by the ordinary forms of process, the Court will vary these forms so as to secure the party his right. (*Cooke* v. *Gibbs,* 3 Mass. 193.) Express authority is given to the Courts by Revised Statutes (Chap. 97, Secs. 10–11) to vary the form of execution, when necessary to adapt them to the changes of the law, or for other sufficient reasons. *And it is believed that such special judgment and award of execution are not unknown to the common law of England, when the rights of the parties require it.*"

In this case, by the attachment the plaintiff under the statute acquired a lien upon, and a right to have this demand satisfied out of, the property attached, and, as I think, by no express provision of the statute, or necessary implication from statutory provisions, was the lien lost, or right impaired by the subsequent death of the defendant. If this be so, and if, in the language of Mr. Chief Justice Shaw, " when the statute confers the right, it confers all the necessary means by which such right can be established and made effectual"—and I have no doubt as to the truth of the proposition—then the District Court has the power to enforce the lien.

Mechanics' liens for the construction of buildings; for the manufacture or repair of articles of personal property ; inn-

keepers' and carriers' liens, and the like, are as much liens *in invitum*, imposed by law independent of conventional stipulation, as liens by attachment, and, when the right has once attached, the latter are no less sacred, and no more without the pale of legal remedy than the former. The purpose of the attachment is to secure the debt, and the judgment only ascertains that there is in fact a debt to be secured, determines its amount, and enforces its satisfaction out of the property attached, if sufficient ; and if insufficient, in a proper case, to the extent necessary, out of the other property of the debtor. The views expressed in this opinion do not appear to me to be inconsistent with the provisions of section two hundred two of the Practice Act cited in the prevailing opinion. In the cases there mentioned no lien was acquired during the lifetime of the defendant. The lien mentioned is a *judgment lien, not a lien by attachment.* In the case of an attachment on mesne process, the lien is created *by the levy,* and *not by the judgment,* and, as we have seen, is wholly independent of the judgment. The *judgment does not create the lien, but is only a means of enforcing a lien already created by the levy*— of giving effect to a right before acquired and fully vested. These remarks are also applicable to section one hundred forty of the Probate Act. The provisions of this section refer to the naked judgment simply establishing a demand. It speaks of the effect of *the judgment,* not of a *lien already acquired.* It says the *judgment shall not* " *create* any lien upon the property of the estate ; " not that it *shall not enforce a lien already created and vested.* The judgments and executions spoken of are judgments and the executions to be issued thereon in the ordinary cases where no lien already exists. The provision has no reference whatever to proceedings to enforce mortgages, mechanics' and other liens, or to the modes of executing judgments in such cases.

Conceding the right to exist, there is nothing in the forms of judicial proceedings in this State to prevent the granting of the relief in this action. The proper course of proceeding in such cases would, perhaps, be, by supplemental complaint to

aver the death of the defendant, and the facts showing the particular relief to which the plaintiff has become entitled by reason of the events happening subsequent to the institution of the suit, so that the facts may be presented in an issuable form in the pleadings. In this case the death of the defendant was suggested, and his representative substituted in the record, and the record of the case shows all the facts necessary to entitle the plaintiff to the relief obtained. The property itself is in the custody of the law, and under the control of the Court, in this very case. The Court finds all the necessary facts and grants the appropriate relief. The only objection, as it seems to me, that could be plausibly urged, is, that it does not appear by the transcript that the levy of the attachment and the existence of the lien was set up in a supplemental complaint, so as to make all the facts constituting the basis of the judgment appear in the pleadings. But this objection, if valid, was not made in the Court below, nor has it been made here. The appellant relies upon the ground that the attachment was dissolved by the death of the defendant, and consequently that no lien survived to be enforced. Upon this ground he rests his case. It may be that a supplemental complaint was filed, setting up the facts. However this may be, the attachment, in my judgment, was not dissolved by the defendant's death, and the facts, as they exist, justify the order for a sale of the property, and application of the proceeds to the payment of the amount found due.